Commonwealth *v.* Stoner et al., Appellants.

Submitted April 14, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James S. Sorrentino,* and *Hassel, Yost & Sorrentino,* for appellants.

*Frederick F. Coffroth,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., September 22, 1975:

Appellants and two co-defendants were charged with possession of a controlled substance (marijuana)[1] and possession with intent to deliver a controlled substance (marijuana).[2] Following the denial of a motion to suppress evidence, appellants were tried and found guilty by a jury. Each was sentenced to pay a fine of $1,000 and to undergo imprisonment for 6 months to 1 year.

The facts indicate that on October 3, 1972, Trooper Larry Williams of the Pennsylvania State Police stopped a car driven by appellant-Stoner for a traffic violation on

---

1. Act of April 14, 1972, P.L. 233, No. 64, §13 (35 P.S. §780-113(a)(16)).

2. Act of April 14, 1972, P.L. 233, No 64, §13 (35 P.S. §780-113(a)(30)).

the turnpike. Appellant-Smith and two other co-defendants were passengers in the car at that time. Upon request, appellant-Stoner produced his operator's license, but when one of the passengers opened the glove compartment to take out the vehicle registration card, a .38 caliber semi-automatic pistol dropped out as the passenger reached into the compartment.

Officer Williams immediately drew his service revolver, assumed a defensive position to the rear of the vehicle, and ordered the occupants out of the car. A "frisk" of the appellants and the co-defendants for additional weapons yielded several pocket knives. Because no one would admit owning the revolver, the officer placed all four persons under arrest for violation of the Uniform Firearms Act.

After placing the four suspects at intervals along the turnpike guardrail, Trooper Williams returned to the car to retrieve the pistol. At that time he observed a title to the car made out to one person and signed in blank to another without notarization. As he reached into the car to secure the pistol and the title, the officer noted a very distinct odor of marijuana about the interior of the vehicle. The trooper testified that he was very familiar with marijuana, and although he saw numerous marijuana seeds and leaves on the floor, seats, and clothing in the car, he was certain that the odor was too strong to be coming from the small amount of the drug he could see. However, before a more extensive search of the car was made, Officer Williams radioed for help.

Approximately five minutes later, Trooper Crossen arrived on the scene. At that time, the officers searched the trunk and found approximately 150 pounds of freshly cut marijuana in five burlap bags. These bags were placed in the police car and after another police officer was summoned, the appellants and the co-defendants were transported from the scene. Trooper Williams testified that he considered it necessary to search the car immedi-

ately because the owner was not present and there was a possibility that if the car was left unguarded and the search delayed, evidence could have been removed. Additionally, the officers felt it inadvisable to leave one of their number to guard the car while the four persons in custody were transported to the barracks. They felt it would be dangerous to attempt to transport four suspects with only two police officers. The troopers felt the most reasonable course of action would be to search the vehicle on the spot and transport the evidence at the same time the appellants and co-defendants were transported. Following the search, the car was locked and subsequently towed to the police station.

The following day, October 4, 1972, a search warrant was issued and additional evidence was taken from the car at the barracks. This evidence consisted of marijuana seeds and leaves, clothing containing marijuana, marijuana-stained gloves, books on growing and cutting marijuana, cigarette papers, and the blank title.

The sole argument raised on appeal is that the warrantless search of the trunk of the car on the turnpike was illegal as being in violation of the Fourth Amendment to the United States Constitution. We find no merit to appellants' argument and will, therefore, affirm.

The courts of the nation and of the Commonwealth have long recognized that a different standard is to be applied when examining the propriety of a warrantless search of a motor vehicle as compared to the standard for a warrantless search of a house. *Chambers v. Maroney*, 399 U.S. 42 (1970); *Carroll v. United States*, 267 U.S. 132 (1925); *Commonwealth v. Dussell*, 439 Pa. 392, 266 A.2d 659 (1970). The primary consideration prompting the dual standard is that since a motor vehicle is mobile, evidence may often be transported out of reach if the police are required to secure a warrant before they are permitted to search.

The deciding factor in determining whether a warrantless search of a motor vehicle is constitutionally permissible is the existence of probable cause. *Commonwealth v. Smith,* 443 Pa. 151, 277 A.2d 807 (1971); *Commonwealth v. Lewis,* 442 Pa. 98, 275 A.2d 51 (1971); *Commonwealth v. Ceravolo,* 224 Pa. Superior Ct. 464, 307 A.2d 288 (1973); *Commonwealth v. Dobkin,* 223 Pa. Superior Ct. 432, 302 A.2d 457 (1973). As the United States Supreme Court stated in *Carroll, supra*: "Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made.

. . . .

"The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband . . . therein which is being illegally transported." 267 U.S. at 153, 155-56. It should also be noted that the right to search and the validity of the seizure are not dependent on the right to arrest. *Carroll v. United States, supra; Commonwealth v. Smith, supra.* Our concern, therefore, is in determining if Officer Williams had sufficient probable cause for believing that the automobile he had stopped contained contraband.

Here, Trooper Williams observed marijuana seeds and leaves in plain view on the floor, seats, and clothing in the car when he leaned in to secure the pistol. The marijuana which was in plain view was sufficient to establish probable cause for the search of the car. *Commonwealth v. Clelland,* 227 Pa. Superior Ct. 384, 323 A.2d 60 (1974).

However, we need not base our decision solely on the evidence in plain view. Trooper Williams indicated additionally that he noted a very strong odor of marijuana coming from inside the car. He stated that the odor was, "[v]ery strong, it was similar to standing in the center

of a field of marijuana." (NT 7) Officer Williams testified that he had, in fact, stood in a field of marijuana while serving as a Military Policeman in Vietnam. He also indicated that freshly cut marijuana emits a stronger odor than does dried marijuana.

The Supreme Court of the United States has held that an odor may be sufficient to establish probable cause for the issuance of a search warrant. *United States v. Ventresca*, 380 U.S. 102 (1965) ; *Johnson v. United States*, 333 U.S. 10 (1948). This position has been followed by other federal courts. *United States v. Curran*, 498 F.2d 30 (9th Cir. 1974) ; *United States v. Brown*, 487 F.2d 208 (4th Cir. 1973) ; *United States v. Pond and Fanelli*, 382 F. Supp. 556 (S.D. N.Y. 1974). While these cases have been concerned with securing warrants for the search of a house, the rationale used to establish probable cause applies equally well when determining the validity of a search of a movable vehicle.

The court in *United States v. Curran, supra,* discussed establishing probable cause from the existence of odors. "The government touches upon the theory sometimes advanced that the courts should acknowledge a 'plain smell' concept analogous to that of plain sight. . . . However, before the officer could rely upon his smelling marijuana as probable cause, he would have to justify his presence at the place . . . where he detected the odor, just as he would have to justify his presence at the place from which he saw the contraband in order to rely on the doctrine of plain view." 498 F.2d at 33. In the instant case, there is no doubt that Trooper Williams was justifiably in the position from which he detected the odor. It would have been a dereliction of duty for him to ignore the obvious aroma of an illegal drug which he was trained to identify.

We are impressed by *United States v. Martinez-Miramontes*, 494 F.2d 808 (9th Cir. 1974), a case nearly on point with the case at bar. In *Martinez-Miramontes*, a border patrol officer observed two persons walking away

from a parked car, and stopped to question them. While the officer was questioning the individuals, a customs agent also stopped. The customs agent walked around the car, sniffed the crevice where the trunk closes, and detected an odor of marijuana. The trunk was searched and marijuana was found. In upholding the validity of the warrantless search of the vehicle as being based on adequate probable cause, the court stated: "We find no distinction of substance between leaning down and turning the head to look inside a motor vehicle to see articles which then come within the 'plain view' doctrine, (citation omitted), and leaning down and sniffing to detect the odor of marijuana.

"The appellant relinquished his reasonable expectation of privacy in the trunk of his automobile when he loaded it with 442 pounds of an odorous weed. By the use of ordinary senses while standing in a place where the officer had a right to be standing, he could then detect the nature of the load." 494 F.2d at 810.

We believe that the rationale employed by the federal court in California is correct and that it is consistent with interpretations of our Supreme Court, and adopt it in the Commonwealth. It would have been totally unreasonable for the police to lock up the car and leave it along the turnpike when they knew by "plain smell" that much more contraband than was visible was secreted in the car. The police testified that the owner of the car was not among those persons in custody, and thus the possibility that the drugs would be removed if the car was left along the highway was very real. Finally, it would have been cumbersome and unreasonable to expect one officer to guard the car while the other two officers transported the four suspects to the barracks and secured a warrant. Under the circumstances, the officers reacted in a positive manner to the evidence "plainly" before them.

Judgments of sentence affirmed.