J. S71038/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STACY FANELLE HENRY, | : | |
| | : | |
| Appellant | : | No. 294 MDA 2014 |

Appeal from the Judgment of Sentence Entered January 28, 2014
In the Court of Common Pleas of Centre County
Criminal Division No(s).: CP-14-CR-0000962-2013

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED DECEMBER 24, 2014**

*Pro se* Appellant, Stacy Fanelle Henry, appeals from the judgment of sentence entered in the Centre County Court of Common Pleas following his jury trial and convictions for possession with intent to deliver[1] ("PWID"), possession of a controlled substance,[2] fleeing or attempting to elude an officer,[3] accidents involving injury to another while not properly licensed,[4]

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 75 Pa.C.S. § 3733(a).

[4] 75 Pa.C.S. § 3742.1.

possession of drug paraphernalia,[5] and recklessly endangering another person.[6] He challenges the trial court's decision to deny his September 9, 2013 counseled suppression motion[7] and his December 17, 2013 *pro se* suppression motion. Appellant also alleges the court erred by appointing Steven P. Trialonis, Esq., as standby trial counsel. We affirm and deny as moot Appellant's February 12, 2014 petition for review and the Commonwealth's application to dismiss.

We state the facts in the light most favorable to the Commonwealth as the verdict-winner. ***Commonwealth v. Diggs***, 949 A.2d 873, 877 (Pa. 2008) (citations omitted). The police learned that Appellant and Alicia Gardner[8] were supplying heroin to drug dealers in Centre County. They also learned that Appellant drove a gray Hyundai car and was planning to travel to Philadelphia to buy more heroin to sell in Centre County.

The police arranged for a controlled purchase of heroin from Appellant at a residence of a known drug dealer during the afternoon of May 2, 2013. That afternoon, an undercover officer conducted surveillance of that residence in an unmarked vehicle and saw Appellant's gray Hyundai in the

---

[5] 35 P.S. § 780-113(a)(32).

[6] 18 Pa.C.S. § 2705.

[7] As noted below, the record does not reflect a formal ruling by the trial court on this counseled motion.

[8] They were not in a personal relationship.

driveway. The officer then saw the vehicle depart with Appellant driving and Ms. Gardner in the front passenger seat.

The undercover officer followed the Hyundai and saw Appellant make repeated movements to the center console. Appellant and Ms. Gardner became suspicious that a police officer was following them. Appellant put drugs inside Ms. Gardner's makeup bag, which he then put in her zebra patterned purse.

The undercover officer saw Appellant commit several traffic violations, including running a red light. Because the officer was undercover in an unmarked vehicle, he contacted his supervisors to have a local police officer conduct a traffic stop of Appellant. A local officer, in a marked car, responded and pulled over Appellant's vehicle. At that point, Ms. Gardner stepped out of the vehicle. The local officer instructed her to renter the vehicle, and she complied.

Appellant, who had remained in the vehicle, told Ms. Gardner, "We're going for it . . . ." and sped away at high speed. N.T. Trial, 1/7/14, at 90.[9] A high-speed police chase ensued involving, *inter alia*, the local and undercover officers. Appellant attempted to drive through a red light when

---

[9] We acknowledge the holding of **In re L.J.**, 79 A.3d 1073 (Pa. 2013), that after October 30, 2013, the scope of review for a suppression issue is limited to the record available to the suppression court. **Id.** at 1085, 1089 (stating holding applies to "all litigation commenced Commonwealth-wide after the filing of this decision"). Because the instant criminal complaint was filed prior to October 30, 2013, **In re L.J.** does not apply.

another vehicle struck his vehicle, causing the Hyundai to become airborne and roll over onto its roof in a nearby parking lot. When the police arrived, they saw Appellant attempting to crawl out of the driver's seat and arrested him. The police also saw Ms. Gardner outside of the vehicle suffering from severe injuries, including a broken neck, spine, hip, and pelvic bones.

Next to the overturned vehicle, the police saw a zebra patterned purse, which they took to a police barracks. At the barracks, a police canine alerted police to the presence of drugs inside the purse. The police applied for a warrant.

In the application for the warrant, under the heading, "name of owner, occupant or possessor of said premises to be searched," Officer Eric Guido listed Appellant and Ms. Gardner together. Officer Guido justified his listing because Appellant was listed as the owner of the vehicle and the purse had Ms. Gardner's identification. N.T. Suppression Hr'g, 11/1/13, at 13. He explained that the reason for putting both names together was because Appellant was the driver of the vehicle and the purse contained Ms. Gardner's identification.[10] *Id.*

The warrant was approved; the police searched the purse and recovered one stack of $4,400 in cash, one stack of $1,500 in cash, one

---

[10] The record does not explain how the officer knew Ms. Gardner's identification was in the purse prior to obtaining the warrant.

stack of $1,814 in cash, sixteen bags of heroin, an owe sheet,[11] and a digital scale. A few days later, Appellant made unsolicited admissions to the police that he could lead them to a large quantity of heroin. N.T. Trial at 224.

Prior to trial, the court appointed Steven Trialonas, Esq., as counsel. Attorney Trialonas filed Appellant's first suppression motion on September 9, 2013. The court heard argument on Appellant's motion on November 1, 2013, but did not formally rule on it. Appellant filed a motion to dismiss counsel and represent himself. After a **Grazier**[12] hearing, the court granted Appellant's motion and appointed Attorney Trialonas as standby counsel. Order, 11/25/13. Appellant, acting *pro se*, filed a motion to suppress on December 17, 2013, and argued it *pro se* at a January 3, 2014 hearing. The court denied same without explanation on January 7, 2013.

Subsequently, Appellant permitted Attorney Trialonas to act as counsel, and Attorney Trialonas represented him at a jury trial, which commenced January 7, 2014. At trial, Ms. Gardner testified that the purse belonged to her and that Appellant placed the drugs in her purse. N.T. Trial at 96. Ms. Gardner also testified about Appellant's inculpatory statements admitting to possessing the drugs and money. *Id.* at 82-83, 86. The jury found Appellant guilty of the above crimes. On January 28, 2014, the court

---

[11] An owe sheet lists amounts owed for drug transactions. N.T. Trial at 221.

[12] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988). The record did not include a transcript of this hearing.

sentenced Appellant to an aggregate sentence of five to ten years' imprisonment. On January 31, 2014, the court granted Attorney Trialonas's petition to withdraw as counsel and docketed Appellant's written waiver of counsel.

Meanwhile, on January 3, 2014, the court docketed Appellant's *pro se* "motion to quash information,"[13] which essentially requested the court to suppress the seized evidence. The court denied it on January 7, 2014, in an order dated January 6, 2014. On January 24, 2014, Appellant filed a *pro se* application to amend the aforementioned order and for a stay, which argued the court erred in denying his *pro se* motion to quash information.[14] The trial court denied Appellant's application on January 31, 2014. Appellant, *pro se*, filed a timely notice of appeal on February 26, 2014,[15] and a timely court-ordered Pa.R.A.P. 1925(b) statement.

Meanwhile, on February 12, 2014, our Supreme Court received Appellant's *pro se* petition for review dated February 9, 2014. Appellant's

---

[13] The motion is dated May 30, 2013. The envelope is post-stamped "Thu 02" with the month and year obscured by dark-colored stamps.

[14] In his application, Appellant characterizes his motion to quash information as a motion to suppress.

[15] The trial court docketed same on March 20, 2014. **See Commonwealth v. Wilson**, 911 A.2d 942, 944 n.2 (Pa. Super. 2006) (discussing prisoner mailbox rule). It is not clear whether the trial court prothonotary transmitted the notice of appeal to this Court, but our docket does not reflect Appellant's notice of appeal. **See** Pa.R.A.P. 905(b).

petition sought review of the trial court's January 31, 2014 order. On February 18, 2014, our Supreme Court transferred Appellant's petition to this Court.

On February 26, 2014, Appellant filed a *pro se* petition for review with this Court, which was essentially identical to his February 12, 2014 Supreme Court petition. This Court denied Appellant's petition on April 16, 2014. In the interim, Appellant filed another *pro se* application for relief with this Court, which we denied on April 17, 2014.

Because Appellant filed a timely notice of appeal from his judgment of sentence with the trial court, and because there appears to be a breakdown in court operations as his notice of appeal was never docketed with this Court, **see** Pa.R.A.P. 905(b), we conclude his appeal is properly before us. Appellant raises the following issues:

> Whether the trial court erred in its decision not to accord [Appellant] standing to litigate [his counseled] suppression claim on November 1, 2013.
>
> Whether the trial court erred in denying [Appellant's *pro se*] motion to suppress on January 6, 2013[, which was filed on December 17, 2013].
>
> Whether the trial court erred in appointing [Attorney Trialonis] as standby counsel for [Appellant].

Appellant's Brief at 2 (reordered to facilitate disposition).

We summarize Appellant's arguments for his first two issues. He suggests the trial court erred by requiring him to establish a privacy interest in the purse from which the police recovered drugs. Appellant claims that

because the search warrant listed him as the co-owner of the purse, he was not required to testify or demonstrate he had a privacy interest. He acknowledges that the purse contained items referencing Ms. Gardner. Appellant maintains there was insufficient evidence to issue a search warrant. We hold Appellant is due no relief.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, it is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Baker*, 24 A.3d 1006, 1015 (Pa. Super. 2011) (punctuation and citations omitted), *aff'd on other grounds*, 78 A.3d 1044

(Pa. 2013). We can also affirm on any basis. ***Commonwealth v. Clouser***, 998 A.2d 656, 661 n.3 (Pa. Super. 2010).

In ***Commonwealth v. Bostick***, 958 A.2d 543 (Pa. Super. 2008), we stated the following:

> "The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution." ***Commonwealth v. Hawkins***, 553 Pa. 76, 718 A.2d 265, 266 (1998). As our Supreme Court further explained in ***Hawkins***:
>
> > The traditional formulation for standing requires a defendant to demonstrate one of the following personal interests:
> >
> > (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged include[s] as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure; or (4) a proprietary or possessory interest in the searched premises.
> >
> > This Court has accorded standing automatically, with no preliminary showing of a proprietary or possessory interest by the defendant, in the third of these circumstances, namely, where possession at the time of the contested search and seizure is an essential element of the prosecution's case.
> >
> > This doctrine of automatic standing has its genesis in the decisions of the United States Supreme Court. . . .

> While [the Pennsylvania Supreme] Court has stated that automatic standing maintains continued vitality under Article 1, Section 8 of the Pennsylvania Constitution, these decisions have recognized that the essential effect is to entitle a defendant to an adjudication of the merits of a suppression motion. In order to prevail on such a motion, however, a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was actual, societally sanctioned as reasonable, and justifiable.

> *Hawkins*, 718 A.2d at 267.

*Id.* at 551 (footnote, most quotation marks, and citations omitted).

Instantly, because Appellant was charged with, *inter alia*, a possessory offense, he had automatic standing to have the court rule on the merits of his suppression motions. *See id.* In order to prevail, however, Appellant had to "demonstrate a personal privacy interest in the . . . effects seized, and that such interest was 'actual, societally sanctioned as reasonable, and justifiable.'" *See id.* Appellant contends he co-owned the purse based upon the Commonwealth's own search warrant listing him and Ms. Gardner as co-owners of the vehicle and purse in question. As noted above, Officer Guido testified he completed the probable cause affidavit in the manner he did because Appellant was the owner of the vehicle and the purse belonged to Ms. Gardner. Appellant, however, acknowledged the purse contained Ms. Gardner's identification. Viewing, as we must, the entire record in the Commonwealth's favor, we cannot conclude Appellant established a personal

privacy interest in the purse, let alone that the interest was "actual, societally sanctioned as reasonable, and justifiable."[16]  **See id.**  Moreover, based upon the aforementioned facts, even if Appellant had a cognizable privacy interest, the Commonwealth had probable cause to obtain the warrant and search the purse.  **Cf. Commonwealth v. Rogers**, 849 A.2d 1185, 1191 (Pa. 2004) (holding police need only reasonable suspicion to justify canine sniff of place); **Commonwealth v. Stoner**, 344 A.2d 633, 635 (Pa. Super. 1975) (holding odor sufficient to establish probable cause for issuance of search warrant).

Appellant's last issue is that the court erred by appointing Attorney Trialonis as his standby counsel.  The substance of his argument, however, is that counsel was ineffective.  Appellant's Brief at 19-23.  It is well-settled that such claims should be deferred until the collateral review stage.  **Commonwealth v. Grant**, 813 A.2d 726, 737 (Pa. 2002).  Accordingly, we do not address the merits of this claim and Appellant may raise this claim without prejudice in a Post Conviction Relief Act[17] petition.  **See id.**

---

[16] Although the trial court held Appellant lacked automatic standing, **see** Trial Ct. Op., 5/5/14, at 2, we nonetheless affirm, albeit partially on other grounds.  **See Clouser**, 998 A.2d at 661 n.3.  Further, because the holding of **In re L.J.** was prospective only, **see In re L.J.**, 79 A.3d at 1085, 1089, we note the trial testimony of Ms. Gardner, who testified the purse was hers and that Appellant placed the drugs in her purse.  N.T. Trial at 96.

[17] 42 Pa.C.S. §§ 9541-9545.

Judgment of sentence affirmed. Appellant's February 12, 2014 petition for review denied as moot. Commonwealth's application to dismiss denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2014