J-S41034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID MICHAEL WILFONG, | |
| Appellant | No. 1922 MDA 2014 |

Appeal from the Judgment of Sentence October 17, 2014
in the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0006034-2013

BEFORE:  ALLEN, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 21, 2015**

Appellant appeals from the judgment of sentence following his conviction of two counts of driving under the influence (DUI),[1] one count of possession of drug paraphernalia,[2] and two summary offenses.  On appeal, Appellant challenges the trial court's denial of his motion to suppress.  For the reasons discuss below, we affirm.

We take the underlying facts and procedural history in this matter from the notes of testimony of the suppression hearing and our independent review of the certified record.  On March 30, 2013, at approximately 3:20

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1)(i) and (d)(1)(iii).

[2] 35 P.S. § 780-113(a)(32).

p.m., Sergeant Darryl Smuck of the Southern Regional Police was on routine patrol in the borough of Loganville in York County. (*See* N.T. Suppression Hearing, 3/26/14, at 9-10). Sergeant Smuck was sitting at the exit to a parking lot, preparing to make a right turn, when he observed a vehicle with a large splintered windshield pass him; he saw two men in the vehicle. (*See id.* at 11). He pulled out and began to follow the vehicle. (*See id.* at 12). As he did, the vehicle began to weave within its travel lane and traveled at an inconsistent speed. (*See id.*). Sergeant Smuck ran the vehicle license plate, which "came back as a dead tag, not a legally registered vehicle." (*Id.*). The vehicle turned right onto Route 216 and Sergeant Smuck activated his lights and sirens to make a traffic stop. (*See id.*). The vehicle continued driving at a slow speed and weaving back and forth, as it rounded a curve, it pulled to the side of the road. (*See id.*). Sergeant Smuck testified that the curve in question is very sharp and dangerous and many accidents and fatal accidents happened there. (*See id.*). He stated that a fatal accident occurred on the exact spot that Appellant pulled over. (*See id.* at 12-13). He also averred that he did not believe Appellant legally parked the vehicle, as he thought the spot might be part of someone's yard. (*See id.* at 13).

As soon as the vehicle pulled over, the passenger jumped out and the driver (later identified as Appellant) slid over and exited the passenger door. (*See id.* at 13). They both approached the police car. (*See id.*). Sergeant

Smuck ordered them to stand by their vehicle. (*See id.*). Noting that Appellant was "very aggravated," Sergeant Smuck requested assistance from other officers. (*Id.*). Two state troopers responded. (*See id.* at 14). Sergeant Smuck then initiated contact with Appellant, asking him why he exited his vehicle, and requesting his driver's license, registration, and insurance card. (*See id.*). Appellant told Sergeant Smuck that the vehicle had been in an accident and the driver's side door did not work. (*See id.*).

As Sergeant Smuck spoke with Appellant, he observed that the passenger kept looking into the vehicle and Appellant remained very upset. (*See id.*). Concerned for his safety, Sergeant Smuck requested that the passenger come to the rear of the vehicle. (*See id.*). Sergeant Smuck then glanced into the vehicle to ascertain that there were no readily available weapons and, as he did, he smelled the odor of marijuana. (*See id.* at 14-15). He then returned to his vehicle to run Appellant's information and observed that Appellant continued to pace around. (*See id.* at 15). Appellant complained that Sergeant Smuck was violating his constitutional rights. (*See id.* at 16). Sergeant Smuck then placed Appellant in handcuffs as a precaution. (*See id.*).

One of the state police officers informed Sergeant Smuck that he was familiar with the vehicle, knew that it had been involved in an accident, and that it was not supposed to be on the road. (*See id.*). Sergeant Smuck contacted the insurance carrier who told him that it removed the vehicle

from the insurance policy at the end of 2012. (*See id.* at 17). Sergeant Smuck ascertained that the vehicle had not been inspected, was not legally tagged, and was not insured. (*See id.*). Sergeant Smuck thought that, parked on the curve, the vehicle represented a danger. (*See id.*). Therefore, he requested a tow truck. (*See id.*). Sergeant Smuck also believed, based upon the odor of marijuana, that Appellant was driving under the influence. (*See id.*). However, Appellant refused to submit to field sobriety tests. (*See id.*).

Sergeant Smuck did not feel that he could arrest Appellant for a DUI. (*See id.*). He advised Appellant that he could not drive the vehicle, which would be towed, and offered to allow Appellant to make a telephone call to arrange for a ride. (*See id.* at 18-19). Appellant refused, saying he lived nearby and would walk home. (*See id.* at 18).

As Appellant began walking away, another police officer from the Southern Regional Police, in accordance with department policy, began an inventory search of the vehicle and discovered a glass smoking pipe with residue that was later determined to be marijuana in the glove compartment.[3] (*See id.*; *see also* N.T. Trial, 8/18/14, at 24). Because the police had discovered contraband, they stopped the search and, in

_____

[3] Sergeant Smuck explained that it was department policy to do an inventory search prior to towing to make sure there were no valuables because a private company tows the vehicles. (*See id.* at 25-26).

- 4 -

accordance with department policy, decided to apply for a search warrant. (*See* N.T. Suppression Hearing, 3/26/14, at 18).  Believing he now had reasonable suspicion that Appellant was driving under the influence, Sergeant Smuck drove up to Appellant, who was walking down the road, explained what they found, and again asked him to do a breath test.  (*See id.* at 18-19).  Appellant refused, Sergeant Smuck then arrested him and transported him to the hospital for a blood test.[4]  (*See id.*).

Following his arrest, Appellant moved to suppress the evidence found in the car, contending that the inventory search was illegal.  (*See* Omnibus Pre-Trial Motion, 2/06/14, at unnumbered pages 2-7).  Following a hearing, on March 26, 2014, the trial court denied the motion to suppress, finding that the procedure employed by the police was "appropriate under the circumstances" because the "vehicle created an issue with regards to public safety."  (*See* N.T. Suppression Hearing, 3/26/14, at 31).

On August 18, 2014, following a bench trial, the trial court convicted Appellant of the aforementioned offenses.  (*See* N.T. Trial, 8/18/14, at 48-49).  On August 28, 2014, Appellant filed a post-trial motion.  (*See* Motion for Post-Trial Relief, 8/28/14, at unnumbered pages 1-2).  The trial court denied the motion on October 15, 2014.  (*See* Order, 10/15/14, at 1).  On October 17, 2014, the trial court sentenced Appellant to a term of

---

[4] At trial, toxicologist Donna Papsun testified that Appellant's blood tested positive for marijuana.  (*See* N.T. Trial, 8/18/14, at 42-43).

incarceration of not less than seventy-two hours nor more than six months with a consecutive twelve-month term of probation. (**See** N.T. Sentencing, 10/17/14, at 4-5). The instant, timely appeal followed. On November 18, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). On December 9, 2014, Appellant filed a timely Rule 1925(b) statement. On January 12, 2015, the trial court issued an opinion, disaffirming his prior decision to deny Appellant's motion to suppress. **See** Rule 1925(a).

On appeal, Appellant raises the following questions for our review:

I.    Did the [t]rial [c]ourt err in finding the retention and impound of the vehicle was necessary and legal?

II.   Did the [t]rial [c]ourt err in allowing the admission of evidence after an unlawful "inventory" search?

(Appellant's Brief, at 4).

On appeal, Appellant challenges the denial of his motion to suppress. (**See** Appellant's Brief, at 7-12). When we review a ruling on a motion to suppress, "[w]e must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings." **Commonwealth v. Holton**, 906 A.2d 1246, 1249 (Pa. Super. 2006), *appeal denied*, 918 A.2d 743 (Pa. 2007) (citation omitted). Because the suppression court in the instant matter found for the prosecution, we will consider only the testimony of the prosecution's witnesses and any uncontradicted evidence supplied by

Appellant. ***See id.*** If the evidence supports the suppression court's factual findings, we can reverse only if there is a mistake in the legal conclusions drawn by the suppression court. ***See id.***

In his first claim, Appellant argues that the retention and impound of the vehicle was illegal and the vehicle should have been immobilized rather than impounded. (***See*** Appellant's Brief, at 7-10). We disagree.

The procedure regarding immobilization of a vehicle is found at 75 Pa. C.S.A. § 6309.2, which states in pertinent part:

> **(a) General rule.—**Subject to subsection (d), the following shall apply:
>
> \* \* \*
>
> (2) If a motor vehicle or combination for which there is no valid registration or for which the registration is suspended, as verified by an appropriate law enforcement officer, is operated on a highway or trafficway of this Commonwealth, the law enforcement officer shall immobilize the motor vehicle or combination or, **in the interest of public safety**, direct that the vehicle be towed and stored by the appropriate towing and storing agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.
>
> **(b) Procedure upon immobilization.—**
>
> \* \* \*
>
> (2) When a vehicle is immobilized pursuant to subsection (a)(2), the owner of the vehicle may appear before the appropriate judicial authority within 24 hours from the time the vehicle was immobilized. The appropriate judicial authority may issue a certificate of release upon:

(i) the furnishing of proof of registration and financial responsibility by the owner of the vehicle; and

(ii) receipt of evidence that the operator of the vehicle has complied with the pertinent provisions of Title 42 and this title.

75 Pa. C.S.A. § 6309.2(a)(2) and (b)(2)(i) and (ii) (emphasis added).

Here, Appellant does not dispute that there was no valid registration for the vehicle but claims that the vehicle did not represent a threat to public safety. (**See** Appellant's Brief, at 9-10). In so doing, Appellant ignores the testimony at the suppression hearing and claims that the testimony **at trial** showed that the vehicle was not a threat to public safety. (**See** Appellant's Brief, at 10).

Initially we note that the Pennsylvania Supreme Court has definitively held that a reviewing court can look only to the record developed at the **suppression hearing** in determining the propriety of the suppression court's decision. **See In re L.J.**, 79 A.3d 1073, 1087 (Pa. 2013). Our review of the record demonstrates that, at the suppression hearing, the Commonwealth proved that the vehicle was a threat to public safety. The testimony established that the vehicle was not inspected, not legally tagged, unregistered, and uninsured. (**See** N.T. Suppression Hearing, 3/26/14, at 12, 17). The vehicle had been in a serious accident and had a cracked windshield and a non-functioning driver's side door. (**See id.** at 11, 14, 16). Appellant stopped it on a sharp curve in a spot known for accidents, and, in

- 8 -

fact, had stopped on the exact spot where a fatal accident had occurred. (*See id.* at 12-13). This evidence supports the suppression court's factual finding that the "vehicle created an issue with regards to public safety." (*Id.*).

Further we find Appellant's argument that the Pennsylvania Supreme Court's decision in *Commonwealth v. Langanella*, 83 A.3d 94 (Pa. 2013) dictates that we overturn the denial of the motion to suppress to be misplaced. In *Langanella*, the police pulled over a motorist for failing to use a turn signal and then ascertained that his driver's license was suspended and that the vehicle did not have an emissions sticker. *See Langanella*, *supra* at 96. Although the defendant said that he could call a friend to drive the vehicle home, the police refused and impounded the vehicle. *See id.* at 96-97. At the suppression hearing, the police testified that the vehicle was undamaged, it was legally parked at the curb, and that the vehicle neither posed a detriment to the flow of traffic nor created a safety hazard. *See id.* at 98. Thus, the Supreme Court found that the Commonwealth had failed to produce any evidence that would allow the police to impound the vehicle pursuant to 75 Pa. C.S.A. § 6309.2(a)(2). *See id.* at 102.

Here, unlike in *Langanella*, we are not discussing a situation where someone else, with a valid license, could drive the car. No one could drive this car because it was not legal. Further, also unlike in *Langanella*, there

was testimony that the car was damaged, that it created a safety hazard in the spot were Appellant parked it, and that the police officer believed that the spot was not a legal parking spot.[5]  Thus, we believe that **Langanella** compels the opposite result.  Therefore, Appellant's claim that the retention and impoundment of the vehicle was illegal must fail.  **See Langanella**, **supra** at 101-02.

In his second claim, Appellant alleges that the search of his vehicle was unlawful.  (**See** Appellant's Brief, at 10-12).  We disagree, although we do so for reasons different from those articulated by the trial court, (**see** N.T. Suppression Hearing, 3/26/14, at 31).  **See Commonwealth v. Harper**, 611 A.2d 1211, 1213 n.1 (Pa. Super. 1992) ("It is well-settled that an appellate court may affirm the decision of the trial court if there is any basis on the record to support the trial court's action.  This is so even if we rely upon a different basis in our decision to affirm.").

_____

[5] Both Appellant and the trial court in its 1925(a) opinion, cite **Langanella** for the proposition that a car cannot represent a threat to public safety unless it is disabled or damaged, impedes the flow of traffic, there is broken glass, or items of value in plain view.  (**See** Appellant's Brief, at 9, Trial Court Opinion, 1/12/15 at 5).  However, a review of **Langanella** clearly shows that this list was not this Court's announcement of a test for determining when a car represents a threat to public safety but rather a recapping of the testimony of the police officer during the suppression hearing.  **See Langanella**, **supra** at 101-02.  Thus, there is nothing in **Langanella** that suggests a vehicle cannot represent a threat to public safety for other reasons.

In ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014), the Pennsylvania Supreme Court adopted the Federal automobile exception to the warrant requirement, holding that only probable cause and no exigent circumstances "beyond the inherent mobility of a motor vehicle is required." ***See Gary***, ***supra*** at 138. In ***Commonwealth v. Cabeza***, 469 A.2d 146 (Pa. 1983), our Supreme Court stated:

> Therefore, we hold that where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

***Cabeza***, ***supra*** at 148.

Appellant acknowledges this but claims that the issue in question was not properly preserved. (***See*** Appellant's Reply Brief, at 5-6). Here, the parties litigated the issue of the lawfulness of the search at all stages of the proceeding; however, Appellant argues that because he litigated it on a different theory it was not properly preserved. (***See id.***). We disagree.

In ***Commonwealth v. Newman***, 99 A.3d 86 (Pa. Super. 2014), the appellant sought the retroactive application of ***Alleyne v. United States***, 133 S.Ct. 2151 (2013) to his case. This Court held that although the appellant had not litigated the specific issue addressed in ***Alleyne***, he had challenged the legality of his sentence through the proceedings; therefore, we found that the issue was properly preserved. ***See Newman***, ***supra*** at 90. Here, the record clearly reflects that Appellant challenged the legality of

the search throughout the proceedings, therefore, the issue is properly preserved and we can apply **Gary** retroactively. **See it.** at 90.

Accordingly, the question before us is whether the police had probable cause to search Appellant's vehicle. We find that they did. Appellant was driving erratically, the vehicle was not "street legal," both Appellant and the passenger were agitated throughout the stop, the passenger kept looking furtively into the vehicle, and Sergeant Smucker smelled an odor of marijuana in it. (**See** N.T. Suppression Hearing, 3/26/14, at 12-15). Thus, probable cause existed to search Appellant's vehicle. **See Commonwealth v. Gelineau**, 696 A.2d 188, 193 (Pa. Super. 1997), *appeal denied*, 705 A.2d 1305 (Pa. 1998) (reversing trial court and finding probable cause to search vehicle where officer smelled marijuana); **Commonwealth v. Stainbrook**, 471 A.2d 1223, 1224-25 (Pa. Super. 1984), (citing **Commonwealth v. Stoner**, 344 A.2d 633 (Pa. Super. 1975) (*en banc*) for proposition that detection of odor of marijuana is sufficient to establish probable cause to search vehicle); **see also Commonwealth v. Jones**, — A.3d —, 2015 WL 4503123, at *3 (Pa. Super. July 24, 2015) (odor of marijuana sufficient probable cause to arrest for DUI). Appellant's claim that the search of his vehicle was unlawful lacks merit.[6]

_____

[6] Moreover, even if we found that **Gary** did not apply, Appellant's claim lacks merit because he premises his argument that the search is unlawful on his
*(Footnote Continued Next Page)*

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/21/2015

---

*(Footnote Continued)* ————————

claim that the police improperly impounded the vehicle, a claim that we found lacking in merit.  (**See** Appellant's Brief, at 10-12).