2020 PA Super 222

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DARRYL RICHARD | : | No. 282 EDA 2019 |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010691-2017

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

OPINION BY McCAFFERY, J.: **FILED SEPTEMBER 11, 2020**

The Commonwealth appeals from the order entered in the Philadelphia County Court of Common Pleas, granting in part a motion to suppress evidence filed by Darryl Richard (Appellee). The Commonwealth contends that the trial court erred in suppressing evidence recovered from a vehicle because the officers possessed probable cause to search the vehicle. Because we agree the initial traffic stop of Appellee was proper, and Appellee's nervous behavior coupled with the strong smell of marijuana emanating from his vehicle provided the requisite probable cause to search the vehicle, we reverse the order of the trial court, and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. On November 5, 2017, at approximately 2:10 a.m., Philadelphia Police Officer Abdel Kanan was on patrol in his marked vehicle when he observed a blue Ford traveling eastbound on Kingsessing Avenue. N.T. Suppression Hr'g,

1/15/19, at 6-8, 16. The officer described the area as a "high-volume crime, high-drug area." *Id.* at 16. Officer Kanan checked the license plate of the vehicle when the vehicle "abruptly pulled into a parking spot without using a turning signal." *Id.* at 8. At the same time, the record to the vehicle showed it was not registered. *Id.* Officer Kanan then "activate[d his] lights and sirens to initiate a vehicle investigation." *Id.* Appellee, the driver, was already out of his vehicle, walking behind it and toward the sidewalk. *Id.* The front passenger also exited the vehicle, but two rear passengers remained in the car. *Id.* at 15. Officer Hugo Rimos arrived as back-up shortly after Officer Kanan activated his lights. *Id.* at 11, 17.

Officer Kanan approached Appellee, and explained that he was conducting a vehicle investigation. N.T., Suppression Hr'g, at 8. Appellee "appeared nervous, he couldn't tell [Officer Kanan] the address he was going to[, and] was pointing to different houses on the block." *Id.* at 9. As Officer Kanan approached Appellee, he smelled the odor of marijuana on Appellee, but did not ask him about it. *Id.* at 9, 10-11. When Appellee asked Officer Kanan why he was stopped, the officer informed him that "the vehicle came back unregistered and [Appellee] pulled into a parking spot without using a turn signal[.]" *Id.* at 9. Officer Kanan asked Appellee who owned the car, and Appellee responded that he had paperwork for it. *Id.* at 10.

Officer Kanan then asked Appellee to go back to the vehicle and retrieve the paperwork. N.T., Suppression Hr'g, at 10. As soon as Appellee opened the car door, "[Officer Kanan] smelled more marijuana coming from inside the

vehicle[.] " *Id.* at 11. The officer testified: "[The odor from the vehicle] was stronger. Once the car door was open, . . . you could definitely smell a strong odor of marijuana inside the vehicle." *Id.* at 43. At that point, Officer Kanan stated to Officer Rimos that he smelled marijuana. *Id.* at 11. In response to that statement, Appellee told Officer Kanan that "he has marijuana on him." *Id.* The officers recovered a baggie containing "about a gram" of marijuana from Appellee's jacket pocket. *Id.* at 21. Officer Kanan then proceeded to "frisk" the vehicle, where he found a .40 caliber handgun with obliterated serial numbers, and a clear, small plastic bag containing suspected marijuana. *Id.* at 12-13. The handgun was recovered from an unlocked, but "little cracked," console on the dashboard. *Id.* at 13, 30. The plastic bag of marijuana was located in "a gap between the passenger seat and the driver's seat that was wide open." *Id.* at 37-38. Neither the gun nor the marijuana was visible before the officer entered the vehicle. *Id.* at 38.

Appellee was subsequently charged with possession of marijuana, possession of an instrument of crime, and violations of the Uniform Firearms Act.[1] On June 29, 2018, Appellee filed a motion to suppress all physical evidence recovered during the encounter, as well as his statement to the officers, claiming that the officers did not have probable cause to stop and

---

[1] 35 P.S. § 780-113(a)(31); 18 Pa.C.S. §§ 907(a), 6106 (possession of firearm without license), 6108 (carrying firearm on public street in Philadelphia, 6110.2 (possession of firearm with altered manufacturer's number).

search the vehicle. *See* Appellee's Motion to Suppress Evidence, 6/29/18, at 1-4 (unpaginated). The trial court held a suppression hearing on January 15, 2019. That same day, the court entered a ruling granting in part, and denying in part, Appellee's motion to suppress.[2] Specifically, the court found that the officer did have "a reason to stop [Appellee] and pat him down" when Appellee was outside the vehicle. N.T., Suppression H'rg, at 62-63. However, the court concluded it was not "reasonable" for the officer to search the car because he "could have gotten a search warrant at that point[.]" *Id.* at 63. The Commonwealth filed a timely appeal on January 24, 2019.[3]

The Commonwealth presents one issue for our review:

Did the lower court misapply the law in suppressing the gun and drugs found in the unregistered car [Appellee] was driving where police lawfully stopped him for violating the motor vehicle code, he smelled of marijuana, he was behaving nervously, an even stronger smell of marijuana emanated from the car, and [Appellee] admitted he had marijuana on his person?

Commonwealth's Brief at 4.

Our standard of review is as follows:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the

---

[2] No written order was entered on the docket.

[3] The Commonwealth certified in its notice of appeal that "this order terminates or substantially handicaps the prosecution" pursuant to Pa.R.A.P. 311(d). Commonwealth's Notice of Appeal, 1/24/19. The Commonwealth also complied with the trial court's order to file a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Miller***, 56 A.3d 1276, 1278-79 (Pa. Super. 2012) (citations omitted).

The Commonwealth argues that the trial court misapplied the law, and failed to address whether the warrantless search of the car was justified by probable cause. Commonwealth's Brief at 9-15. Specifically, the Commonwealth contends that the officers' actions were justified during each stage of their interaction with Appellee.

First, Commonwealth maintains that the officer's traffic stop was justified due to the officer witnessing two traffic violations by Appellee. Commonwealth's Brief at 10. Appellee first turned into a parking lane without using a turn signal, in violation of Section 3334 of the Motor Vehicle Code (MVC). ***Id.*** ***See*** 75 Pa.C.S. § 3334(a) (requiring driver to use signal when moving from one lane of traffic to another or entering traffic from parked position). In addition to the turn signal violation, the Commonwealth insists that Officer Kanan was justified in stopping Appellee based on his discovery that the car Appellee was driving was unregistered. Commonwealth's Brief at 11. ***See*** 75 Pa.C.S. § 1301(a) (prohibiting person from driving vehicle that is unregistered).

Second, the Commonwealth argues the search of Appellee's car was supported by probable cause. Commonwealth's Brief at 11. The

Commonwealth relies upon **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014), for the proposition that the "prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required." **Id.** at 11, *quoting* **Gary**, 91 A.3d at 138. The Commonwealth insists the officers had probable cause to search the vehicle based on the following factors: Appellee attempted to walk away from the car, he displayed visible characteristics of nervousness, and the smell of marijuana became stronger when Appellee opened his car door. **Id.** at 14. These elements, according to the Commonwealth, suggested that drugs might be in the car which gave the officers probable cause to conduct a warrantless search of the vehicle. **Id.** The Commonwealth acknowledges the trial court's observation that the search should have ended with the discovery of marijuana on Appellee's person, but nevertheless argues that this discovery "did not eliminate probable cause to search the car." **Id.** Therefore, under the totality of the circumstances, the Commonwealth asserts that we should reverse the order of the trial court and remand for further proceedings. **Id.** at 15-16.

As noted above, the trial court granted Appellee's motion to suppress the evidence recovered inside his vehicle, but denied the motion to suppress the evidence recovered from his person, as well as his voluntary statement made outside of the vehicle. In its opinion, the court concluded that Appellee's failure to signal before pulling into a parking spot was not, in fact, "a violation under the MVC that would amount to probable cause to stop a vehicle." Trial

Ct. Op., 8/21/19, at 5. Nevertheless, because Appellee was outside the vehicle, the court found the search of Appellee's person was permissible. *Id.* According to the trial court, the encounter between Appellee and Officer Kanan should have ended after Appellee surrendered the marijuana on his person. *Id.* The court opined: "While the officers smelled marijuana on Appellee's person, who was already out and away from his vehicle, the officer's initial reason for signaling the lights was the failure to use a turning signal when entering a parking spot." *Id.* Therefore, the trial court granted suppression of the evidence found in Appellee's vehicle after the alleged improper stop. *Id.*

We begin with a brief discussion of the vehicle stop. A police officer's statutory authority to stop a motor vehicle is codified in Section 6308(b) of the Motor Vehicle Code, which provides:

> Whenever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may be reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

We note that the trial court's opinion focuses solely on whether Officer Kanan had probable cause to stop Appellee's vehicle for a turn signal violation. *See* Trial Ct. Op. at 4-5. However, it is clear from the testimony at the suppression hearing that the officer did not activate his lights and siren until

- 7 -

he learned the vehicle was unregistered.  N.T., Suppression H'rg, at 8.  At that point, the officer had probable cause to believe Appellee was in violation of 75 Pa.C.S. § 1301(a).  Even though Appellee's turn into the parking spot was determined by the trial court not to be a Vehicle Code violation, Appellee's car was unregistered – which provided a separate basis for the stop.  Therefore, we agree with the Commonwealth that the initial traffic stop by Officer Kanan was justified.[4]

Next, we must determine whether the warrantless search of the vehicle was proper.  Generally, "a search conducted without a warrant is presumed to be unreasonable unless it can be justified under a recognized exception to the search warrant requirement." *Commonwealth v. Davis*, 188 A.3d 454, 457 (Pa. Super 2018) (citation omitted).  One such exception exists when a police officer possesses probable cause to search a lawfully stopped motor vehicle.  *Id.* at 457-58.  *See also Gary*, 91 A.3d at 138 ("The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required.").

Thus, we proceed to an examination of whether such probable cause existed in the present case.

---

[4] Although, during the suppression hearing, the trial court seemed to acknowledge that the officer did not stop Appellee until "after he ran the plate and the plate came back as no record[,]" the court focused solely on the purported turn signal violation in its opinion.  *See* N.T., Suppression H'rg, at 62; Trial Ct. Op. at 4-5.

The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant. The well-established standard for evaluating whether probable cause exists is the "totality of the circumstances" test. This test allows for a flexible, common-sense approach to all circumstances presented. Probable cause typically exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer.

*Commonwealth v. Lechner*, 685 A.2d 1014, 1016 (Pa. Super. 1996) (citations omitted).

In *Commonwealth v. Stoner*, 344 A.2d 633 (Pa. Super. 1975), this Court first set forth the doctrine of plain smell. In that case, a state trooper stopped the defendant-driver because of a traffic violation. *Id.* at 633. Three co-defendants were passengers in the car at that time. *Id.* "Upon request, [the defendant-driver] produced his operator's license, but when one of the passengers opened the glove compartment to take out the vehicle registration card, a .38 caliber semi-automatic pistol dropped out as the passenger reached into the compartment." *Id.* The trooper then arrested all four occupants of the vehicle for a violation of the Uniform Firearms Act. *Id.* at 634. When the trooper returned to the car to retrieve the pistol, he noted "a very distinct odor of marijuana about the interior of the vehicle." *Id.* "The trooper testified that he was very familiar with marijuana, and although he saw numerous marijuana seeds and leaves on the floor, seats, and clothing in the car, he was certain that the odor was too strong to be coming from the

small amount of the drug he could see." *Id.* The trooper then searched the trunk and found approximately 150 pounds of freshly cut marijuana in five burlap bags. *Id.*

On appeal, this Court concluded the warrantless search of the trunk was permissible, finding probable cause existed based on the following factors present in that particular case — marijuana seeds and leaves on the car floor in plain view, and the strong smell of marijuana coming from inside the car. *Id.* at 635. *See also Commonwealth v. Stainbrook*, 471 A.2d 1223, 1225 (Pa. Super. 1984) (holding police officer was justified in conducting search of vehicle after observing furtive behavior of occupant and detecting odor of burning marijuana); *Commonwealth v. Trenge*, 451 A.2d 701, 705, 710 (Pa. Super. 1982) (observations by "highly trained and experienced police officer" of marijuana pipe stem protruding from defendant's pocket, in addition to the odor of burning marijuana in defendant's immediate vicinity, provided officer with probable cause to arrest).

In the present case, we conclude Officer Kanan had probable cause to search Appellee's vehicle. The officer testified that while Appellee was speaking to him, "[Appellee] appeared nervous, he couldn't tell [Officer Kanan] the address he was going to[, and Appellee] was pointing to different houses on the block." N.T., Suppression H'rg, at 9. Moreover, although Officer Kanan first detected an odor of marijuana on Appellee outside the vehicle, he testified the odor was "stronger" inside the vehicle. *Id.* at 43.

While we recognize many of the "plain smell" decisions involve factors in addition to the smell of marijuana, we find that the totality of the circumstances presented here — the marijuana discovered on Appellee's person, Appellee's visible nervousness and inability to tell Officer Kanan where he was going, and the strong smell of marijuana emanating from inside the vehicle — provided the officer with probable cause to believe marijuana was located inside the car. Thus, we conclude Officer Kanan conducted a lawful, warrantless search of the vehicle, and the trial court erred when it suppressed the marijuana and firearm recovered therein.

Accordingly, because we conclude the trial court erred in granting, in part, Appellee's pretrial motion to suppress, we reverse the order on appeal and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/20

- 11 -