J-S08005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICKY FIELDS | |
| Appellant | No. 214 WDA 2016 |

Appeal from the PCRA Order dated January 12, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006918-2012

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and SOLANO, J.

MEMORANDUM BY SOLANO, J.: **FILED MAY 19, 2017**

Appellant, Ricky Fields, appeals from the order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. PCRA counsel also filed a petition to withdraw pursuant to **Turner**/**Finley**.[1] We affirm and grant PCRA counsel's petition to withdraw.

Appellant was found guilty of possession of a prohibited firearm, carrying firearms without a license, and driving while operating privileges are suspended or revoked.[2] The facts of this case are related in an opinion of the trial court following Appellant's conviction:

---

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).

[2] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1) and 75 Pa.C.S. § 1543(a), respectively.

This matter arises out of the arrest on March 4, 2012 of [Appellant] following an encounter between [Appellant] and police officers responding to a call of shots fired in Homestead, Pennsylvania.

[Appellant joined co-defendant's] Motion to Suppress all evidence obtained during the encounter and a hearing was held on December 20, 2012.

At the Suppression Hearing[,] the Commonwealth called Officer James Wintruba of the Homestead Police Department[,] who testified that on March 4, 2012 at approximately 1:00 a.m. he was dispatched to West 15th Avenue in Homestead for a report of numerous shots fired in the area. Officer Wintruba testified that this is a high crime and drug area with numerous reports of shots fired and attempted homicides, as well as a homicide having occurred within the last year.

Officer Wintruba proceeded to an alleyway along the rear of the 300 block of W[est] 15th St[reet]. As he was in the alleyway he observed a silver four door Cadillac parked at an angle on the left side of the street with the brake lights on. The rear of the car was one to two feet from the curb and the front wheels were touching the curb. Officer Wintruba testified that he was using his spotlight to scan the area and as he was passing the Cadillac he ran the spotlight through the windows and saw the occupants slouched down inside the vehicle so low that he could only see the tops of their heads. At that point Officer Wintruba backed his vehicle up and checked on the registration of the vehicle and was informed that the vehicle's registration had been checked four times recently related to possible criminal activity.

Officer Wintruba then decided to watch the vehicle and call for backup. As he was watching the vehicle, all four doors opened simultaneously and four men got out of the vehicle. He noted that the driver was wearing a gray jacket and the passenger directly behind him was wearing a blue coat with a blue shirt and horizontal stripes. The other two passengers were both dressed similarly and were similarly built. Officer Wintruba identified [Appellant] as the driver of the vehicle and Michael Watts as the left

rear passenger. Officer Wintruba testified that after [Appellant] exited the vehicle he then returned to the driver's door and appeared to be locking the door before walking away again. Officer Wintruba testified that because the other two men who were in the vehicle, Duane Alston and Jeffdyn Rushton, were wearing similar clothes and were similarly built he could not tell who had been sitting in the right front seat and who had been in the right rear seat. Officer Wintruba watched the four men walk away and followed them in his vehicle until his partner arrived.

At that point, Officer Wintruba approached the men and asked to speak to them. He described them as cooperative and informed them that he was investigating a report of shots fired. He acknowledged that he was talking to them in part to stall for time to allow additional backup to arrive as only he and his partner were present. As he began speaking to them he could smell an overwhelming odor of green fresh marijuana. At that point he told them that he believed they had marijuana in their possession and he would have to check them. Officer Wintruba testified he informed them that they were being detained until he could determine where the marijuana was located and each agreed to be patted down.

Trial Ct. Op., 6/24/13, at 2-4 (footnote and citations to the record omitted; paragraphing added).

Officer Wintruba further testified, as follows:

Q. You said they were detained at that point, by that you mean they were handcuffed?

A. They were handcuffed around then. . . . They weren't handcuffed when I said I smelled marijuana. At that point I believe they were all handcuffed. Once again, there were four of them and two of us. It came across the radio that back-up wouldn't be available for some time.
. . .
They would have been against the wall, and they were very relaxed.

Q. Did you tell them to go to the wall?

A. We were in that area, and I explained that since there were two of us that we were going to have to handcuff them.

N.T., 12/20/12, at 35-36. The trial court's opinion continues:

[Officer Wintruba] also asked them for identification. [Appellant] produced a Pennsylvania identification card which, when checked, came back as showing [Appellant] having his driving license suspended. [Appellant] was asked if anyone else in the vehicle had a driver's license and [Appellant] then became very nervous and said he would call his girlfriend to drive the car and then said he would drive the car himself.

When Michael Watts was asked for identification he could not produce any identification but instead identified himself as Michael Dickerson and gave a date of birth. When that information was checked and came back with no record, Mr. Watts then became argumentative as the officers tried to obtain more information regarding his identity. It was then determined that he was wearing an ankle bracelet with an electronic monitor on it at which point he was placed in the rear of one of the police vehicles. Alston produced identification and was released from the scene. Rushton was searched and found in possession of marijuana and was placed under arrest.

At that point Officer Wintruba told [Appellant] that his vehicle would have to be towed as no one could drive the vehicle and was asked if he would consent to it being searched. [Appellant] denied having the keys but when told that he was seen locking the driver's door, [Appellant] then said that he lost the keys and he couldn't find them.

Trial Ct. Op., 6/24/13, at 4-5 (citations to the record omitted). Appellant "was placed in" the police vehicle. N.T., 12/20/12, at 18. Officer Wintruba "transported [Appellant] and Rushton in [his] police car less than a block back to where the car was parked." *Id.* The opinion continues:

- 4 -

Officer Wintruba then approached the vehicle and looked inside using the light from the nearby street light and saw a handgun sitting on the floor boards of the right rear seat. After seeing the gun[,] Officer Wintruba return to the vehicle and asked [Appellant] and Rushton if they had ever been arrested before and if they had ever been convicted of felonies. Both said they had felony convictions and[, after being asked by Officer Wintruba, "Are you guys allowed to have any guns," N.T., 12/20/12, at 19,] acknowledged they were not allowed to possess firearms. At that point Officer Wintruba returned to the vehicle and, using his flashlight, looked through the passenger window and saw the magazine and the butt of the handle of a firearm projecting from underneath the front seat on the driver's side. He then opened the right rear door and retrieved the handgun, a Ruger, from the floor in front of the right rear seat and then went to the other side of the vehicle and retrieved the second handgun, a Glock, from under the driver's seat. All four men were subsequently arrested and charged with possession of firearms.

Based on the testimony of Officer Wintruba the Motion to Suppress was denied. The case then immediately proceeded to a nonjury trial and Officer Wintruba's testimony was incorporated as his trial testimony. On cross examination Officer Wintruba acknowledged that Mr. Watts was seated in the left rear passenger seat and that the handgun was on the right center side of the vehicle. He also acknowledged that he didn't see any furtive movement from any of the occupants of the vehicle because they were slouched down so low he could only see the tops of their heads. He also acknowledged that the gun in the front of the car was directly under the front seat.

Trial Ct. Op., 6/24/13, at 5 (citations to the record omitted).

After Officer Wintruba's testimony, the Commonwealth moved into evidence a certified conviction for possession with intent to deliver a controlled substance and a certified firearms license form showing that Appellant did not have a valid license to carry a firearm. Commonwealth

Exs. 7-8; N.T., 12/20/12, at 74. The trial court admitted these exhibits without objection by Appellant. *Id.*

Also relevant to Appellant's PCRA contentions, the Commonwealth stated the following during closing arguments:

> They can't be in the presence of a gun regardless of whether it's their gun or someone else's gun. Because of that, Your Honor, I feel we have met our burden beyond a reasonable doubt, and I believe the presence of the guns in plain view meets that burden of proof.

N.T., 12/20/12, at 88.

On December 20, 2012, following a bench trial, Appellant was found guilty of the firearms charges and of driving while operating privileges are suspended or revoked. Appellant was sentenced to four to eight years' confinement.

Appellant filed a direct appeal challenging, among other things, that the trial court should have suppressed the seized evidence because the police lacked any basis to detain him and the inventory search of the vehicle was invalid. This Court held that Appellant waived these two issues because, instead of filing his own motion to suppress based on the facts and arguments specific to him, he joined his co-defendant's motion to suppress, which was based on different facts and raised arguments peculiar to that co-defendant. *Commonwealth v. Fields*, 94 WDA 2013, at 6 (Pa. Super., Nov. 12, 2013), *appeal denied*, No. 542 WAL 2013, 89 A.3d 660 (Pa., Apr. 4, 2014). Further, Appellant's then-trial counsel also did not present

any arguments or question any witness at the suppression hearing. **Id.** This Court addressed Appellant's preserved challenge to the sufficiency of the evidence and affirmed.

On July 1, 2014, Appellant filed a timely *pro se* PCRA petition.[3] On August 12, 2014, PCRA counsel entered his appearance for Appellant, and on October 8, 2014, he filed an amended PCRA petition. After holding a hearing, on January 12, 2016, the PCRA court denied Appellant's PCRA petition. Appellant timely appealed on February 11, 2016.

On November 29, 2016, PCRA counsel filed a **Turner**/**Finley** letter and brief with this Court, along with a motion to withdraw as counsel. Appellant did not file a *pro se* or counseled response to the **Turner**/**Finley** letter.

In his **Turner/Finley** brief, PCRA counsel raises the following appellate issues on Appellant's behalf:

> 1. Whether trial counsel gave ineffective assistance for failing to properly raise the claim that the statement by Appellant should have been suppressed pursuant to **Miranda v. Arizona**[, 384 U.S. 436 (1966)]?
>
> 2. Whether trial counsel gave ineffective assistance for failing to properly argue that the evidence should be suppressed in violation of Article 1, Section 8 of the

---

[3] Appellant's judgment of sentence became final on July 3, 2014, when the 90-day time period for filing an appeal to the United States Supreme Court expired. **See** U.S. Sup. Ct. R. 13; 42 Pa.C.S. § 9545(b)(3). His PCRA petition hence was timely, and this Court therefore has jurisdiction over the appeal from his petition. **See** 42 Pa.C.S. § 9545(b)(1) (petition must be filed no later than one year after judgment of sentence became final); **Commonwealth v. Hernandez**, 79 A.3d 649, 651 (Pa. Super. 2013).

Pennsylvania Constitution and the Fourth Amendment when Appellant was subject to an illegal arrest?

3. Whether trial counsel gave ineffective assistance for failing to properly argue that the evidence should be suppressed in violation of Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment when police illegally seized Appellant's vehicle?

4. Whether trial counsel gave ineffective assistance for failing to object to prosecutor's argument that the Commonwealth was not required to prove possession or constructive possession?

***Turner*/*Finley*** Brief at 7.

Our standard of review of a PCRA court's denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the record evidence and free of legal error. ***Commonwealth v. Wilson***, 824 A.2d 331, 333 (Pa. Super. 2003) (*en banc*). Before we review Appellant's claim, however, we must ascertain whether PCRA counsel satisfied the requirements to withdraw:

> The ***Turner*/*Finley*** decisions provide the manner for post-conviction counsel to withdraw from representation. The holdings of those cases mandate an independent review of the record by competent counsel before a PCRA court or appellate court can authorize an attorney's withdrawal. The necessary independent review requires counsel to file a "no-merit" letter detailing the nature and extent of his review and list each issue the petitioner wishes to have examined, explaining why those issues are meritless. The PCRA court, or an appellate court if the no-merit letter is filed before it, ***see Turner***, *supra,* then must conduct its own independent evaluation of the record and agree with counsel that the petition is without merit. ***See*** [***Commonwealth v.***] ***Pitts***[, 603 Pa. 1, 3 n.1, 981 A.2d 875, 876 n.1 (2009)].

- 8 -

In ***Commonwealth v. Friend***, 896 A.2d 607 (Pa. Super. 2006)[,] ***abrogated in part by Pitts***, *supra,* this Court imposed additional requirements on counsel that closely track the procedure for withdrawing on direct appeal. Pursuant to ***Friend,*** counsel is required to contemporaneously serve upon his client his no-merit letter and application to withdraw along with a statement that if the court granted counsel's withdrawal request, the client may proceed *pro se* or with a privately retained attorney. Though Chief Justice Castille noted in ***Pitts*** that this Court is not authorized to craft procedural rules, the Court did not overturn this aspect of ***Friend*** as those prerequisites did not apply to the petitioner in ***Pitts****. **See Pitts***, *supra* at 881 (Castille, C.J., concurring).

After the decision in ***Pitts***, this Court held in ***Commonwealth v. Widgins***, 29 A.3d 816 (Pa. Super. 2011), that the additional procedural requirements of ***Friend*** were still applicable during collateral review.

***Commonwealth v. Freeland***, 106 A.3d 768, 774-75 (Pa. Super. 2014).

Here, we conclude that PCRA counsel's ***Turner/Finley*** no-merit letter complies with all of these requirements. ***See Freeland***, 106 A.3d at 774-75. Accordingly, we conduct our own independent evaluation of the record to ascertain whether we agree with PCRA counsel that Appellant is not entitled to relief. ***See id.***

All four issues raised by Appellant are claims of ineffective assistance of counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must demonstrate the following: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. ***See Commonwealth v. Pierce***,

- 9 -

527 A.2d 973, 975 (Pa. 1987). In this context, a finding of "prejudice" requires the petitioner to show "there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different." ***Commonwealth v. Stevens***, 739 A.2d 507, 512 (Pa. 1999); ***see also Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013) ("the petitioner was prejudiced — that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different"). "If a petitioner fails to prove any of these prongs, his claim fails." ***Id.*** Where "the underlying claim is meritless, the derivative claim of ineffective assistance of counsel for failing to object has no arguable merit." ***Commonwealth v. Spotz***, 47 A.3d 63, 122 (Pa. 2012). "[C]ounsel cannot be considered ineffective for failing to pursue a meritless claim." ***Commonwealth v. Lopez***, 739 A.2d 485, 495 (Pa. 1999), ***cert. denied***, 530 U.S. 1206 (2000).

We first address the merits of Appellant's claim that he was improperly interrogated in violation of ***Miranda v. Arizona***, 384 U.S. 436 (1966). ***Turner***/***Finley*** Brief at 8-12. Specifically, PCRA counsel challenges Officer Wintruba's inquiries about Appellant's prior arrests, prior felony convictions, and ability to own firearms, while Appellant was handcuffed and after he had been patted down by police. ***Turner***/***Finley*** Brief at 11; ***see also*** N.T., 12/20/12, at 19, 35-36; Trial Ct. Op., 6/24/13, at 4-5. PCRA counsel alleges that this claim had merit, but "[a]t the trial, the Commonwealth

presented a stipulation that Appellant had been convicted of possession with the intent to deliver, a felony, which would bar him from possessing a firearm. Therefore, Appellant cannot prove actual prejudice." **Turner**/**Finley** Brief at 12.

We are unable to locate in the notes of testimony the "stipulation" referenced by counsel, but those notes do show that Appellant's certified conviction for possession with intent to deliver a controlled substance and a certified firearms license form showing that Appellant did not have a valid license to carry a firearm were both moved into evidence by the Commonwealth and admitted by the trial court without objection by Appellant. **See** Commonwealth Exs. 7-8; N.T., 12/20/12, at 74. In light of this evidence, Appellant could not prove prejudice.

In addition, we conclude that Appellant's **Miranda** argument lacks arguable merit. "In a **Terry** stop,[4] the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions."

_____

[4] A "**Terry** stop" is "[a]n investigative detention [that] occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes." **Commonwealth v. Barber**, 889 A.2d 587, 592 (Pa. Super. 2005). "Such a detention constitutes a seizure of a person and thus activates the protections of the Fourth Amendment and the requirements of **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." **Barber**, 889 A.2d at 592. It must be supported by "reasonable suspicion that the person seized is then engaged in unlawful activity." **Id.** at 593.

- 11 -

*Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) (citation and internal quotation marks omitted). Thus, the simple act of a police officer stopping an individual and asking him or her for basic biographical information is permissible. *See id.* More in-depth interrogation, however, requires a deeper analysis:

> It is a fundamental precept of constitutional law that a suspect subject to a custodial interrogation by police must be warned that he has the right to remain silent, that anything he says may be used against him in court, and that he is entitled to the presence of an attorney. *Miranda*, 384 U.S. at 469, 86 S.Ct. 1602. If an individual is not advised of those rights prior to a custodial interrogation, any evidence obtained through the interrogation is inadmissible at trial. *In re K.Q.M.,* 873 A.2d 752, 755 (Pa.Super.2005). The *Miranda* safeguards are triggered "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 292, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) . . . (defining interrogation to include express questioning and its functional equivalent).

*Commonwealth v. Freeman*, 128 A.3d 1231, 1240 (Pa. Super. 2015).

In *Commonwealth v. Rosas*, 875 A.2d 341, 348 (Pa. Super. 2005), *appeal denied*, 897 A.2d 456 (Pa. 2006), we held that, "for their safety, police officers may handcuff individuals during an investigative detention." In *Commonwealth v. Guillespie*, 745 A.2d 654, 660–61 (Pa. Super. 2000), we determined that the act of handcuffing suspects during an investigatory detention "was merely part and parcel of ensuring the safe detaining of the individuals during the lawful *Terry* stop," and we could not "find that the officer's detention of Guillespie and the fact that he was placed

- 12 -

in handcuffs immediately rose to the level of an unwarranted custodial detention."

In **Commonwealth v. Pakacki**, 901 A.2d 983, 988 (Pa. 2006), a police officer conducted a pat-down and "felt an object in the defendant's left front pants pocket; he asked what it was, and the defendant responded it was 'chronic,' which the officer knew to be a street term for marijuana." The Supreme Court of Pennsylvania held that this pat-down search was not the functional equivalent of an arrest and that pat-down searches do not place a suspect in custody for **Miranda** purposes.

In **Commonwealth v. Revere**, 888 A.2d 694 (Pa. 2005), the Supreme Court of Pennsylvania was "persuaded that a hard and fast rule that would equate placing a suspect in a police vehicle and transporting him with an arrest requiring probable cause, in all instances, would be an arbitrarily crabbed view of **Terry**." **Id.** at 706 (footnote omitted). "[T]here is no hard and fast rule which prohibits the movement of suspects during the course of an investigative detention." **Id.** at 703-04.

Instantly, we focus our discussion upon whether Appellant was "in custody" for **Miranda** purposes at the time of his statement. According to Officer Wintruba, he handcuffed the suspects because there were four suspects and only two officers, as back-up would not be available for some time. N.T., 12/20/12, at 35. They were also in a high-crime area, late at night. Trial Ct. Op., 6/24/13, at 2-3.

Since being handcuffed for purposes of officers' safety, being patted down, and being transported are insufficient to establish that a defendant was in custody at the time that he was questioned by police, we hold that Appellant was not in custody so as to require **Miranda** warnings. **See Pakacki**, 91 A.2d at 988; **Revere**, 888 A.2d at 703-04, 706; **Rosas**, 875 A.2d at 348; **Guillespie**, 745 A.2d at 660–61. Accordingly, his **Miranda** challenge is meritless, and "counsel cannot be considered ineffective for failing to pursue a meritless claim." **Lopez**, 739 A.2d at 495. Thus, we disagree with PCRA counsel's contention that Appellant's underlying **Miranda** claim had merit.

Appellant's next claims that trial counsel gave ineffective assistance for failing to argue that evidence stemming from Appellant's allegedly illegal arrest should be suppressed. **Turner**/**Finley** Brief at 12-13. According to Appellant, this "illegal arrest" occurred when Appellant was detained "to determine who had the marijuana," handcuffed, and subjected to a "'pat down' search." **Id.** (citing N.T., 12/20/12, at 35-36). For the reasons explained above, Appellant was neither in custody nor arrested at this time. **See Pakacki**, 91 A.2d at 988; **Revere**, 888 A.2d at 703-04, 706; **Rosas**, 875 A.2d at 348; **Guillespie**, 745 A.2d at 660–61. Thus, Appellant's illegal arrest claim is meritless, as is his derivative ineffective assistance of counsel claim. **Lopez**, 739 A.2d at 495.

Appellant further claims that trial counsel gave ineffective assistance by not properly arguing that evidence stemming from Appellant's motor vehicle search – specifically, the firearm – should be suppressed. ***Turner***/***Finley*** Brief at 13-14.

Our review of the record discloses that in Appellant's direct appeal, trial counsel did argue that the search of Appellant's vehicle and the seizure of the handguns within it were invalid and that the firearms should thus be suppressed. Trial Ct. Op., 6/24/13, at 2. Appellant's PCRA claim on this issue therefore is without merit. In addition, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned direct appeal opinion of the Honorable Randal B. Todd dated June 24, 2013, we conclude that no relief is due on this issue because there was no proper basis for suppression. ***See*** Trial Ct. Op., 6/24/13, at 11-13 (finding: pursuant to ***Commonwealth v. Liddie***, 21 A.3d 229, 233-34, 236 (Pa. Super. 2011) (*en banc*), that a warrantless search of a vehicle is justified and the evidence seized therefrom should not be suppressed when the officer observed the vehicle from a lawful vantage point, the incriminating nature of the evidence was immediately apparent, and probable cause arose suddenly and without any advance warning that the defendant or his vehicle would be the target of an investigation; here, the testimony demonstrated that the firearms were in plain view when Officer Wintruba approached the

- 15 -

vehicle and were seized pursuant to this limited exception).[5]   Accordingly, with respect to Appellant's third issue raised in this current appeal, we affirm on the basis of the trial court's direct appeal opinion.

Finally, Appellant claims that trial counsel was ineffective for failing to object to the Commonwealth's closing argument, alleging that the Commonwealth had improperly stated the law about possession.  To prove ineffective assistance of counsel, a petitioner must show that he was prejudiced by counsel's act or omission.  ***Pierce***, 527 A.2d at 975.  In ***Commonwealth v. McFadden***, 156 A.3d 299, 309 (Pa. Super. 2017), we wrote, "This was a bench trial, and a trial court acting as the fact-finder **is presumed to know the law**, ignore prejudicial statements, and disregard inadmissible evidence" (emphasis added; citation and internal quotation marks omitted).  Appellant had a non-jury trial; thus, in the current action, the trial court is also presumed to have known the law and to have ignored any inaccurate statements about the law made by either counsel.  ***See id.*** Hence, Appellant has failed to demonstrate prejudice and, therefore, cannot establish ineffective assistance of counsel.  ***See Pierce***, 527 A.2d at 975.

---

[5] On direct appeal, this Court held that Appellant's challenge to the trial court's failure to suppress evidence that Appellant claimed was the fruit of illegal searches and seizures was waived.  ***Fields***, 94 WDA 2013, at 5.  The trial court's analysis of this claim nevertheless is applicable to the substantive issue underlying Appellant's third ineffective assistance of counsel challenge for the instant collateral appeal.

For the reasons stated above, we affirm the PCRA court's order. Because, for Appellant's third issue on appeal, we affirm partly on the basis of the trial court's opinion of June 24, 2013, the parties are instructed to attach a copy of the trial court's opinion of June 24, 2013, to all future filings. We also grant PCRA counsel's petition to withdraw.

Petition to withdraw granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/19/2017

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA

v.

RICKY FIELDS,

      Defendant.

CRIMINAL DIVISION

NO:   CC201206918

**OPINION**

JUDGE RANDAL B. TODD

COPIES SENT TO:

Stephen A. Zappala, Jr.
District Attorney

By

Michael Streily, Esquire
Assistant District Attorney
401 Courthouse
436 Grant Street
Pittsburgh, PA 15219

Counsel of Record for Defendant:

Charles R. Pass, III, Esquire
429 Fourth Avenue
1204 Law & Finance Building
Pittsburgh, PA 15219

13 JUN 24 PM 2:43

FILED

DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY, PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) ) ) | CRIMINAL DIVISION |
| v. | ) ) | NO: CC201206918 |
| RICKY FIELDS, | ) ) | |
| Defendant. | ) ) | |

TODD, J.

June 24, 2013

## OPINION

This is an appeal by Defendant, Ricky Fields, after he was found guilty after a nonjury trial on December 20, 2010 of Possession of Firearm Prohibited in violation of 18 Pa.C.S.A. §6105 (a)(1); Firearm Not to be Carried without a License in violation of 18 Pa.C.S.A. §6106 (a)(1); and, Driving While Operating Privilege Suspended or Revoked in violation of 75 Pa.C.S.A. §1543(a). On December 20, 2012 Defendant was sentenced to 4 to 8 years incarceration for Possession of Firearm Prohibited and a concurrent sentence of 3 to 6 years for Firearm Not to be Carried without a License. On January 11, 2013 an order was entered appointing counsel to represent Defendant on appeal and granting Defendant leave to proceed In Forma Pauperis. On January 14, 2013 Defendant filed a Notice of Appeal to the Superior Court. On January 15, 2013 an order was entered granting an extension of time to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925 (b). On March 8, 2013 Defendant filed his concise statement which set forth the following:

"(1) Officers lacked probable cause or reasonable suspicion to stop and seize Defendant and, consequently, any statements and evidence obtained as a result of said stop/seizure must be suppressed as obtained in violation of

1

article I, Section 8 of the Pennsylvania Constitution in the Fourth and Fourteenth amendments to the United States Constitution;

(2) the impoundment and warrentless inventory search of the Cadillac violated said constitutional provisions as there was no consent to said seizure and search, there is no evidence of a formal/written borough policy for impounding or conducting inventory searches, the primary/sole purpose of impounding or searching the Cadillac was to investigate and uncover evidence of crime, and there was no evidence of danger to the public or the presence of valuable property supporting towing or inventory search of the Cadillac, and such policy was unreasonably applied as none of the males were given the opportunity contact the owner of the vehicle or other licensed driver to move the car to a lawful parking position/location; and

(3) there is insufficient evidence to support convictions at Counts 1 and 3 as DNA evidence showed Co-Defendant Rushton and Co Defendant Watts could not be excluded as contributor of the DNA found on the firearms but Defendant was excluded, Defendant was not seen making furtive movements toward/near either firearm, and the vehicle was registered to a person other than Defendant. – see N.T., 12/20/2012 at 17, 73 77."

## BACKGROUND

This matter arises out of the arrest on March 4, 2012 of Defendant following an encounter between Defendant and police officers responding to a call of shots fired in Homestead, Pennsylvania.[1] Defendant filed a Motion to Suppress all evidence obtained during the encounter and a hearing was held on December 20, 2012. At the Suppression Hearing the Commonwealth called Officer James Wintruba of the Homestead Police Department who testified that on March 4, 2012 at approximately 1:00 a.m. he was dispatched to West 15th Avenue in Homestead for a report of numerous shots fired in the area. (T., p. 5) Officer

---

[1] Co-Defendant, Michael Watts, was also arrested during the encounter and charged at CC201206917 with Possession of Firearm Prohibited and Firearms not to be Carried without a License. Watts was found guilty and has filed an appeal for which a separate opinion is filed.

2

Wintruba testified that this is a high crime and drug area with numerous reports of shots fired and attempted homicides, as well as a homicide having occurred within the last year. (T., p. 5) Officer Wintruba proceeded to an alleyway along the rear of the 300 block of W. 15th St. As he was in the alleyway he observed a silver four door Cadillac parked at an angle on the left side of the street with the brake lights on. The rear of the car was one to two feet from the curb and the front wheels were touching the curb. Officer Wintruba testified that he was using his spotlight to scan the area and as he was passing the Cadillac he ran the spotlight through the windows and saw the occupants slouched down inside the vehicle so low that he could only see the tops of their heads. (T., p. 7) At that point Officer Wintruba backed his vehicle up and checked on the registration of the vehicle and was informed that the vehicle's registration had been checked four times recently related to possible criminal activity. (T., p. 8) Officer Wintruba then decided to watch the vehicle and call for backup. As he was watching the vehicle, all four doors opened simultaneously and four men got out of the vehicle. He noted that the driver was wearing a gray jacket and the passenger directly behind him was wearing a blue coat with a blue shirt and horizontal stripes. The other two passengers were both dressed similarly and were similarly built. (T., p. 9) Officer Wintruba identified Defendant as the driver of the vehicle and Michael Watts as the left rear passenger. (T., p. 10) Officer Wintruba testified that after Defendant exited the vehicle he then returned to the driver's door and appeared to be locking the door before walking away again. (T., p. 10) Officer Wintruba testified that because the other two men who were in the vehicle, Duane Alston and Jeffdyn Rushton, were wearing similar clothes and were similarly built he could not tell who had been sitting in the right front seat and who had been in the right rear seat. (T., p. 11) Officer Wintruba watched the four men walk away and followed them in his vehicle until his partner arrived. (T., p. 12) At that point, Officer Wintruba

3

approached the men and asked to speak to them. (T., p. 12)  He described them as cooperative and informed them that he was investigating a report of shots fired.  He acknowledged that he was talking to them in part to stall for time to allow additional backup to arrive as only he and his partner were present.  As he began speaking to them he could smell an overwhelming odor of green fresh marijuana. (T., p. 14)  At that point he told them that he believed they had marijuana in their possession and he would have to check them.  Officer Wintruba testified he informed them that they were being detained until he could determine where the marijuana was located and each agreed to be patted down. (T., p. 14)  He also asked them for identification.  Defendant produced a Pennsylvania identification card which, when checked, came back as showing Defendant having his driving license suspended.  Defendant was asked if anyone else in the vehicle had a driver's license and Defendant then became very nervous and said he would call his girlfriend to drive the car and then said he would drive the car himself.

When Michael Watts was asked for identification he could not produce any identification but instead identified himself as Michael Dickerson and gave a date of birth. (T., p. 15)  When that information was checked and came back with no record, Mr. Watts then became argumentative as the officers tried to obtain more information regarding his identity. (T., p. 16)  It was then determined that he was wearing an ankle bracelet with an electronic monitor on it at which point he was placed in the rear of one of the police vehicles. (T., p. 16)  Alston produced identification and was released from the scene.  Rushton was searched and found in possession of marijuana and was placed under arrest. (T., p. 16)

At that point Officer Wintruba told Defendant that his vehicle would have to be towed as no one could drive the vehicle and was asked if he would consent to it being searched.  Defendant denied having the keys but when told that he was seen locking the driver's door,

4

Defendant then said that he lost the keys and he couldn't find them. (T., p. 17) Defendant, Watts and Rushton were then transported back to where the car was parked. (T., p. 18) Officer Wintruba then approached the vehicle and looked inside using the light from the nearby street light and saw a handgun sitting on the floor boards of the right rear seat. (T., p. 18) After seeing the gun Officer Wintruba return to the vehicle and asked Defendant and Rushton if they had ever been arrested before and if they had ever been convicted of felonies. Both said they had felony convictions and acknowledged they were not allowed to possess firearms. (T., p. 19) At that point Officer Wintruba returned to the vehicle and, using his flashlight, looked through the passenger window and saw the magazine and the butt of the handle of a firearm projecting from underneath the front seat on the driver's side. (T., p. 20) He then opened the right rear door and retrieved the handgun, a Ruger, from the floor in front of the right rear seat and then went to the other side of the vehicle and retrieved the second handgun, a Glock, from under the driver's seat. (T., p. 40) All four men were subsequently arrested and charged with possession of firearms.

Based on the testimony of Officer Wintruba the Motion to Suppress was denied. The case then immediately proceeded to a nonjury trial and Officer Wintruba's testimony was incorporated as his trial testimony. On cross examination Officer Wintruba acknowledged that Mr. Watts was seated in the left rear passenger seat and that the handgun was on the right center side of the vehicle. (T., p. 65, 67) He also acknowledged that he didn't see any furtive movement from any of the occupants of the vehicle because they were slouched down so low he could only see the tops of their heads. He also acknowledged that the gun in the front of the car was directly under the front seat.

5

The Commonwealth submitted crime lab reports establishing that both guns were operational and also produced certified records showing each of the occupants of the vehicle had criminal records and did not have a license to possess a firearm. (T., pp. 73-74)

The Commonwealth also submitted DNA test results that showed that Rushton could not be excluded as a contributor to the DNA mixture profile obtained from the Glock handgun found under the front seat. Fields, Alston and Watts were excluded as significant contributors to the DNA mixture profile that came from the Glock. As to the Ruger in the back seat, Watts could not be excluded as a possible contributor to the DNA mixture profile obtained from that gun. Fields, Rushton and Alston were excluded as significant contributors to the DNA mixture profile obtained from the Ruger. Finally, no conclusions could be drawn concerning the DNA mixture profile obtained from the swabbing of the grip plate and magazine release of the Ruger. (T., p. 76, 77) After consideration of all of the evidence, Defendant was found guilty related to possession of the gun under the driver's seat.

## DISCUSSION

In his first assignment of error Defendant contends that that Officer Wintruba lacked probable cause or reasonable suspicion to stop or seize Defendant and that any statements or evidence obtained during the stop or seizure should be suppressed. In order to determine if the evidence should be suppressed, the nature of the encounter between the officer and Defendant must be reviewed. The types or categories of encounters between police and a citizen have been described as follows:

> "There are three categories of police interactions which classify the level of intensity in which a police officer interacts with a citizen, and such are measured on a case by case basis. Traditionally, Pennsylvania Courts have recognized three categories of encounters between citizens and the police. These

6

categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these is a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause. *Commonwealth v. Mendenhall*, 552 Pa. 484, 488 715 A.2d 1117, 1119 (1998) (citing *Commonwealth v. Polo*, 563 Pa. 218, 759 A.2d 372, 375 (2000))." *Commonwealth v. Collins*, 950 A.2d 1041, 1044-49 (Pa. Super. 2008)

In the present case, it is clear that Officer Wintruba's initial contact with Defendant and his companions was not an investigative detention. Officer Wintruba, while investigating a report of shots fired in a high crime area late at night and while alone, noted that Defendant and his companions were slouched down in a vehicle that he was passing in an alleyway. It is important to note that upon seeing the occupants of the vehicle slouched down, Officer Wintruba simply backed up and maintained a safe distance from the vehicle so he could observe it. He did not block the vehicle in any way or activate his emergency lights. He did not command or instruct the occupants of the vehicle to take any action, such as showing their hands or exiting the vehicle. He simply observed the vehicle while illuminating it with his light, which was certainly reasonable given the circumstances. In determining if an investigative detention has occurred, the inquiry is whether, considering the totality of the circumstances, a reasonable person would believe he was free to leave A determination must be made whether by means of physical force or show of authority, the citizen's movement has in some way been restrained. *Commonwealth v. Au*, 42 A.3d 1002, 1004 (Pa. 2012) Clearly an investigative detention had not occurred at that point. Defendant and his companions apparently did not feel that they were in anyway restrained because, as Officer Wintruba watched the vehicle, they all simultaneously exited the vehicle and walked away. Officer Wintruba then followed them and, only after his partner arrived, did he

7

approach them. He credibly testified that at that point the encounter was not confrontational and that he wanted to have a conversation with them. The fact that he waited until he was not alone with the four men in the alley before approaching them was a reasonable step to take for his protection and did not constitute a show of force that would have escalated his interaction with them, at that point, into an investigatory stop. There was no evidence that Officer Wintruba or his partner blocked Defendant or his companions, pulled or displayed their weapons or took any other action or exhibited any other display of force that would indicate that they were restrained. In fact, Officer Wintruba testified that as he began speaking to the men, they were relaxed and informed him that they were looking for a party. He informed them that he was investigating a report of shots fired and that they were in a dangerous area. During this encounter, Officer Wintruba detected a strong smell of marijuana coming from the men in the group. At that point, Officer Wintruba had articulable and reasonable suspicion that criminal activity was afoot and it is clear that he had a basis to continue his investigation of Defendant and his companions. In *Commonwealth v. Stoner*, 344 A.2d 633 (Pa. Super. 1976) the Superior Court discussed the issue of whether or not an odor of marijuana established probable cause for the warrantless search of a vehicle stating:

> "'The government touches upon the theory sometimes advanced that the courts should acknowledge a 'plain smell' concept analogous to that of plain sight. . . . However, before the officer could rely upon his smelling marijuana as probable cause, he would have to justify his presence at the place . . . where he detected the odor, just as he would have to justify his presence at the place from which he saw the contraband in order to rely on the doctrine of plain view.' 498 F.2d at 33.
>
> In the instant case, there is no doubt that Trooper Williams was justifiably in the position from which he detected the odor. It would have been a dereliction of duty for him to ignore the obvious aroma of an illegal drug which he was trained to identify." *Commonwealth v. Stoner*, 344 A.2d 633, 635 (1975)

8

In the present case, Office Wintruba was justifiably in the position from which he detected the odor of marijuana coming from the group of men. At that point in time he had reasonable suspicion to conduct an investigatory investigation. As stated in *Commonwealth v. Rogers*, 849 A.2d 1185 (2004):

> "A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. Commonwealth v. Cook, 558 Pa. 50, 735 A.2d 673, 676 (1999). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." Id. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In re D.M., 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." Cook, 735 A.2d at 676 (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." Cook, 735 A.2d at 676." *Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (2004)

Under the circumstances, Officer Wintruba had a reasonable suspicion that Defendant and his companions were engaged in criminal activity and an investigative detention was justified.

As part of the investigation Defendant was asked also for his identification. The police may ask an individual for identification without violating their constitutional rights. In *Commonwealth v. Au*, 42 A.3d 1002 (2012), the Supreme Court addressed the issue of the right of a police officer to request identification from the occupants of a vehicle where there was no indication that a traffic violation had occurred. The Court stated:

> Upon review, we find that Judge Shogan's dissent reflects the appropriate application of prevailing Fourth Amendment law. As she suggested, Appellee's circumstances as a passenger in a parked car upon the arresting officer's approach were roughly analogous to those in the bus-and-airport-encounter decisions such as Smith and Dowds. In both lines of cases, the travelers were asked for identification by law enforcement officers, but no seizure was found to have occurred at such juncture. See Smith, 575 Pa. at 217, 836 A.2d at 13; Dowds, 563

9

Pa. at 387, 761 A.2d at 1130. See generally Hiibel, 542 U.S. at 185, 124 S.Ct. at 2458 ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."); Bostick, 501 U.S. at 434–35, 111 S.Ct. at 2386 ("We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual [and] ask to examine the individual's identification[.]" (internal citations omitted)); United States v. Hicks, 2009 WL 3150394, at 4 (E.D.Pa. Sept. 23, 2009) ("A uniformed police officer, who would be expected to carry a gun, may approach a legally parked vehicle and ask the occupants questions without implicating the Fourth Amendment.") *Commonwealth v. Au*, 42 A.3d 1002, 1007 (Pa. 2012)

Defendant produced identification which, when checked, indicated that his license was suspended. Officer Wintruba testified that he had observed Defendant exit the vehicle from the driver's seat and then, after walking a short distance, return to the driver's door as though he was locking the car. Based on all of the information that was available to Officer Wintruba, Defendant could not drive the vehicle from the scene and he was transported back to the vehicle that was parked in the alley. Upon looking into the vehicle Officer Wintruba was able to observe in plain view, with the light from a nearby streetlight, the handgun on the floor in the back seat area of the car. Then, using his flashlight, he looked into the front of the vehicle and saw part of a second gun sticking out from under the driver's seat. The fact that Officer Wintruba used his flashlight to illuminate the interior of the front seat area does not negate the fact that the second gun was in plain view. *Commonwealth v. Merkt*, 600 A.2d 1297 (1992). After observing the guns, Officer Wintruba then asked both Defendant and Rushton if they had criminal records and both acknowledged that they had been convicted of felonies and were not permitted to possess vehicle. As result, probable cause existed to believe that the guns were illegally possessed by Defendant and the other occupants of the vehicle. Further, Officer Wintruba validly seized the guns in the vehicle pursuant to the limited motor vehicle exception recognized in Pennsylvania.

10

In *Commonwealth v. Liddie*, 21 A.3d 229 (Pa. Super. 2011) the Superior Court discussed the circumstances under which an officer may seize evidence from a vehicle without warrant. In *Liddie*, an officer stopped the defendant who was driving alone in his vehicle for speeding. The defendant admitted that he did not have a driver's license and while speaking to the officer, the officer noted the smell of raw marijuana. He then looked through the rear window and saw a bag of marijuana on top of an open duffle bag. The defendant was then removed from the vehicle and placed in the police cruiser and the officer returned to the vehicle and removed the marijuana and upon doing so saw, in plain view, what he believed to be crack cocaine inside the duffle bag. The officer then removed the duffle bag and later did a complete search which revealed cocaine and drug paraphernalia. The defendant filed a motion to suppress claiming the police illegally seized the drugs and paraphernalia. The trial court denied the motion as to the marijuana but granted it as to the cocaine and paraphernalia. The court found that the marijuana was properly subject to a warrantless search because it was in plain view. However, the court determined that the cocaine was discovered only after a warrantless search and since the Commonwealth failed to establish any exigent circumstances to justify the warrantless search, the cocaine and paraphernalia should be suppressed. The Superior Court reversed stating:

> "Because the Commonwealth invokes the plain view doctrine to establish the constitutionality of the warrantless seizure of cocaine recovered from Liddie's vehicle, we review its claim under Commonwealth v. Brown, 2011 PA Super 67, 23 A.3d 544, a recent en banc decision issued by this Court. Brown applied the plain view doctrine to a warrantless seizure of incriminating evidence observed in a vehicle; the decision also carefully analyzed the status of Pennsylvania's limited automobile exception based upon our Supreme Court's plurality decision in McCree." *Commonwealth v. Liddie*, 21 A.3d 229, 233-34 (Pa. Super. Ct. 2011)

11

After reviewing *Brown* and *McCree*, the Court found that the officer observed the vehicle from a lawful vantage point; that the incriminating nature of the evidence was immediately apparent; and, that the officer had a right of lawful access because probable cause arose suddenly and without any advance warning that the defendant or his vehicle would be the target of an investigation. The Court stated:

> "Therefore, because the police lacked advance notice and an opportunity to obtain a warrant before commencing a search, Officer Orth lawfully accessed the interior of Liddie's vehicle to recover evidence relating to an ongoing investigation. Brown, 2011 PA Super 67, 20 A.3d at 559. Once the marijuana was lawfully removed, the bag of cocaine which was immediately seen sitting on top of the open duffle bag was, in turn, lawfully removed." *Commonwealth v. Liddie*, 21 A.3d 229, 236 (Pa. Super. 2011)

In the present case, Officer Wintruba observed the vehicle from a lawful vantage point; under the circumstances the incriminating nature of the gun was readily apparent; and, the probable cause arose suddenly and without any advance warning that Defendant or the vehicle would be the target of an investigation and, therefore, the guns were properly seized by Officer Wintruba pursuant to the limited automobile exception which permits a warrantless search.

In his second assignment of error, Defendant asserts that the search of the vehicle and seizure of the handguns was invalid as there was no evidence to support a valid inventory search. Specifically, Defendant asserts that there was no evidence of a formal or written policy for impounding or searching the vehicle; there was no evidence of danger to the public or the presence of valuable property supporting the towing of the vehicle; and, there was no opportunity given to have the vehicle moved by the owner of the vehicle or a licensed driver. However, the testimony of Officer Wintruba establishes that the guns were not discovered or seized pursuant to an inventory search. Although Officer Wintruba may have planned on having the vehicle towed, the testimony reviewed above demonstrates that the guns were in plain view

12

when Officer Wintruba approached the vehicle and were seized pursuant to the limited automobile exception. Therefore, the lack of evidence regarding a formal policy related to an inventory search does not warrant the suppression of the evidence.

Defendant next asserts that the evidence was insufficient to support the convictions for possession of the handgun because the DNA evidence excluded Defendant as a contributor of the DNA found on the gun; Defendant was not seen making any furtive movements toward or near the firearm; and, the vehicle was registered to a person other than Defendant.

When reviewing a sufficiency of the evidence claim the evidence must be viewed in the light most favorable to the Commonwealth, as verdict winner, to determine if there is sufficient evidence to enable a fact-finder to find every element of the crime charged beyond a reasonable doubt. *Commonwealth v. McNair*, 603 A.2d 1014 (1992). It is exclusively within the province of the fact-finder to believe none, some or all of the evidence presented. *Commonwealth v. Henry*, 569 A.2d 929, 939 (1990); *Commonwealth v. Jackson*, 485 A.2d 1102 (1984). If the fact finder reasonably could have determined from the evidence presented that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. *Commonwealth v. Wood*, 637 A.2d 1335, 1343 (1994) *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. 2000)

In the instant case the gun was not found on Defendant, so he could only be convicted if the Commonwealth proved constructive possession or joint constructive possession with the other occupants of the vehicle. To do this, the Commonwealth must present evidence to show that Defendant had both the power to control the firearm and the intent to exercise that control. *Commonwealth v. Duffy*, 340 A.2d 869 (1975). Two actors may have joint control and equal

13

access and thus both may constructively possess the contraband and the intent to exercise conscious dominion can be inferred from the totality of the circumstances. *Commonwealth v. Sanes*, 955 A.2d 369, 372-73 (Pa. Super. 2008)

In this case, the Commonwealth met its burden of establishing Defendant's constructive possession of the gun found by Officer Wintruba under the driver's seat of the vehicle. Officer Wintruba credibly identified Defendant as the individual who exited the vehicle from the driver's seat and the gun was located in a position partially under the driver's seat where it would have been within the easy reach of Defendant. After exiting the vehicle, Defendant was seen returning to the driver's door and locking it. Later, after it was determined that Defendant's license was suspended and he would not be permitted to drive the vehicle, Defendant became very nervous and alternately claimed that he did not have the keys and then that he lost the keys. In addition, when Officer's Wintruba first saw the vehicle in the alleyway, it was apparent that Defendant and the other occupants attempted to avoid being seen in the vehicle by slouching down. This evidence supports the finding that Defendant was aware the gun was in the vehicle under his seat and was attempting to divert Officer Wintruba from seeing or finding the gun and further supports the finding that he had the power and intent to exercise control over the gun.

Defendant's further assertion that the evidence was insufficient to convict him of possession of the gun because the DNA test results that the Commonwealth offered excluded Defendant as a contributor of the DNA found on the gun under the front seat is without merit. It is recognized that the mere absence of DNA on tested items is not conclusive evidence that a Defendant may not have been involved in the crime. As noted in *Commonwealth v. Conway* 14 A.3d 101, (Pa. Super. 2011), reargument denied (Mar. 16, 2011), appeal denied, 29 A.3d 795 (2011) "In DNA, as in other areas, an absence of evidence is not evidence of absence." The

14

totality of the evidence supports the finding that Defendant had the power and the intent to exercise control over the handgun under the front seat of the vehicle and, therefore, the Commonwealth met its burden of proof.

By the Court:

_____ J.

15