J-S20045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
  :
v.   :
  :
  :
  :
JOSEPH FRANK JANOWSKI, III   :
  :
Appellant   :   No. 92 MDA 2025

Appeal from the Judgment of Sentence Entered November 8, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001677-2023

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:        **FILED JULY 10, 2025**

Appellant, Joseph Frank Janowski, III, appeals from the aggregate judgment of sentence of 6 to 12 years' incarceration, imposed after he was convicted, following a non-jury trial, of various firearm and traffic offenses. Herein, Appellant solely challenges the trial court's denial of his pretrial motion to suppress evidence. After careful review, we affirm.

Appellant was arrested and charged with various offenses following a traffic stop by Pennsylvania State Troopers Thomas Robin and Nathaniel Edmonds on November 24, 2023. During the stop, the troopers discovered that Appellant was intoxicated, learned that his operating privileges had been suspended, and found a firearm in his pocket. *See* Appellant's Brief at 9. Ultimately, Appellant was charged with persons not to possess a firearm (18 Pa.C.S. § 6105(a)(1)); carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)); prohibited offensive weapons (18 Pa.C.S. § 908); driving

under the influence of drugs (75 Pa.C.S. § 3802(d)(2)); driving while operating privileges are suspended/revoked (75 Pa.C.S. § 1543(a)); and failing to use a turn signal (75 Pa.C.S. § 3334).

Appellant filed a pretrial motion to suppress evidence obtained during the traffic stop. On September 10, 2024, the court conducted a hearing. There,

> the Commonwealth called Trooper … Edmonds of the Pennsylvania State Police as a witness. (N.T.[,] 9/10/24, [at] 9). Trooper Edmonds testified that[,] on the evening of November 24, 2023, he and Trooper … Robin were in a marked patrol vehicle when they observed Appellant driving an automobile. (*Id.* at 11). The Commonwealth submitted into the record as Exhibit 1B the police cruiser's Motor Vehicle Recording (MVR) System video from that evening. (*Id.*) Trooper Edmonds narrated the video as it played for the [c]ourt because there was no audio. He testified that he was positioned on East Railroad Street facing Nichols Street and Route 61 in Pottsville monitoring traffic[,] at which time he observed Appellant driving a gold SUV "moving fast" through the intersection of Railroad Street and Terry Reiley Way. (*Id.* at 13-18). Trooper Edmonds related that he and Trooper Robins, who was driving the police cruiser, followed the vehicle and made a right onto Terry Reiley Way. (*Id.* at 18-19). He stated that he could see Appellant's car near Rumors restaurant, although the car was not shown on the MVR at that point…. Trooper Edmonds remained in the passenger seat while Trooper Robin was driving. Trooper Edmonds looked to his left and observed Appellant's vehicle[,] at Peacock Street and North Centre Street[,] make a left[-]hand turn onto North Centre Street without activating its turn signal. (*Id.* at 20-21, 26; Commonwealth Exhibit 1B at 38 seconds). Trooper Edmonds acknowledged that the MVR quality was not the clearest; however, he stated he had a better line of sight and visual acuity than what the MVR depicted. (*Id.* at 22, 25-26). Trooper Edmonds testified that at 38 seconds[,] the MVR picked up Appellant's vehicle and showed brake lights as Appellant came to a stop at Peacock and North Centre Streets. (*Id.* at 22-24; Commonwealth Exhibit 1B). Trooper Edmonds stated that although there was a fence in his line of sight[,] the fence consisted of metal posts which he could see through. (*Id.* at 26).

- 2 -

On cross[-]examination, Trooper Edmonds admitted that Trooper Robin's affidavit of probable cause contained an error[,] in that it stated the troopers were traveling on Railroad Street when they saw Appellant's vehicle. (***Id.*** at 27). Trooper Edmonds disagreed with Appellant's counsel when questioned about his line of sight and presented with photographs of fencing and the intersection of North Centre Street. He contested the photo's angle. (***Id.*** at 30-31; Defendant's Exhibits 1 and 2). After the troopers pulled onto North Centre Street, Trooper Edmonds testified that he queried [in a computer system] Appellant's registration plate and it "showed no records." (***Id.*** at 32). He explained that when police run a registration plate[,] the inquiry will show the registered owner, the plate expiration, and the owner's registered address. In this instance, Trooper Edmonds stated that no records came back when he ran Appellant's registration plate. (***Id.***[]). He stated Trooper Robin activated the cruiser's police lights after running the registration plate. (***Id.***).

The Commonwealth then called the affiant in this matter, Trooper … Robin[.] He testified that on the evening of the traffic stop he had been monitoring traffic on East Railroad Street in the City of Pottsville. (***Id.*** at 34-35). The Commonwealth played the MVR again and Trooper Robin[] narrated it. Trooper Robin stated that Trooper Edmonds first identified Appellant's vehicle. Trooper Robin did not see it until he pulled out and drove southbound on East Railroad Street towards the intersection of East Railroad Street and Terry Reiley Way. (***Id.*** at 35; Commonwealth Exhibit 1B at 25 seconds). Trooper Robin acknowledged that his affidavit of probable cause contained an error. He explained that he did not have the MVR while typing the affidavit and the area at issue has a lot of confusing intersections and streets. (***Id.*** at 36, 42). Trooper Robin testified that the MVR at 25 seconds reflected the troopers['] turning right northbound on Terry Reiley Way and approaching the intersection of Terry Reiley Way and Front Street. This is when he saw Appellant's vehicle turn left with no turn signal. He admit[ted] that the MVR "didn't catch it." (***Id.*** at 36). Trooper Robin stated Appellant approached the other intersection of North Centre and Peacock Street where he could clearly see Appellant's vehicle through the fence. He observed the vehicle fail to use its left turn signal. (***Id.***; Commonwealth [Exhibit] 1B).

Trooper Robin testified that as part of his normal investigative procedure[,] he caught up to Appellant's vehicle to obtain the registration number. (***Id.*** at 37-38; Commonwealth Exhibit 1B at 47 seconds). He and Trooper Edmonds entered the registration

plate into the NCIC/CLEAN system and[,] through a PennDOT response[,] they received "no records found." (***Id.*** at 38; Commonwealth Exhibit 1[B] at 57 seconds). After the no records found response, Trooper Robin testified that they attempted to locate a temporary registration tag on Appellant's vehicle, but were unsuccessful. (***Id.*** at 39). He stated that he initiated a traffic stop as standard police investigative procedure when there is no record found[,] nor no temporary tag located. Trooper Robin activated his red and white emergency lights. (***Id.***[]; Commonwealth Exhibit 1B at 1 minute, 15 seconds[]). Trooper Robin stated he was conducting the traffic stop for both left turn violations and to investigate the legality of the motor vehicle due to the registration issue. (***Id.*** at 39).

On cross[-]examination, Trooper Robin clarified that the affidavit of probable cause indicated he saw Appellant's vehicle while travelling. He added that Trooper Edmonds saw the vehicle while parked. (***Id.*** at 41). Trooper Robin admitted he made a mistake identifying the intersection in his affidavit of probable cause when he typed it. He stated that he actually observed Appellant's first left turn violation while the police vehicle was at the intersection on Front Street and Terry Reiley Way looking left[,] and added that the MVR did not pick up that violation because the police cruiser was facing straight. (***Id.*** at 43-44, 46). Trooper Robin reiterated that Appellant failed to use his left turn signal twice. (***Id.*** at 45-49). He testified that he and Trooper Edmonds observed the second left turn violation at North Centre and Peacock Streets[,] noting that there is a stop sign at that intersection. (***Id.*** at 49). He explained he did not activate his lights and initiate the traffic stop until after he checked the vehicle's registration because he did not consider this incident a pursuit prior to initiating the stop. (***Id.*** at 50).

[Appellant's counsel] … argued that the [c]ourt should not believe either trooper's testimony concerning their observations of Appellant's alleged left signal violations. (***Id.*** at 53). She noted the error contained in the affidavit of probable cause and further argued that Trooper Robin failed to charge any registration violation[,] despite testimony that he followed police protocol in conducting a registration search through NCIC. (***Id.*** at 54).

Trial Court Opinion (TCO), 1/27/25, at 4-7 (footnotes omitted; some spacing altered).

At the close of the suppression hearing testimony, the court granted in part, and denied in part, Appellant's motion to suppress. In partially granting the motion, the court "suppressed the testimony and portions of the MVR pertaining to the alleged turn signal violations." *Id.* at 8. The court "took issue with Commonwealth Exhibit 1B because it was impossible to see the vehicle in the video at the time of the alleged turning violations." *Id.* The court noted, however, that both troopers "testified consistently on that issue[,]" and "[t]here was no reason to disbelieve either trooper as their testimony was consistent[.]" *Id.*

Additionally, the court partially denied Appellant's motion to suppress. In doing so, it noted that the court "did accept the troopers' testimony about the NCIC registration search results as credible[, and] ultimately determine[d] [that] the registration results, or lack thereof, provided probable cause that a Motor Vehicle Code violation had occurred to warrant the traffic stop." *Id.* The court explained that "[t]he troopers['] account of activating their emergency lights *after* they conducted the NCIC search at 47 seconds into the MVR video was supported by the video's depiction of the emergency lights first appearing on the MVR at 1 minute, 15 seconds, further rendering their testimony credible." *Id.* (citation omitted; emphasis in original). Thus, the court denied Appellant's request to suppress evidence recovered during the stop of his vehicle.

Appellant's case proceeded to a non-jury trial, at the close of which the court convicted him of the above-stated offenses. On November 8, 2024,

Appellant was sentenced to the aggregate term set forth *supra*. He filed a timely notice of appeal, and he and the court complied with Pa.R.A.P. 1925. Herein, Appellant states one issue for our review: "Did the trial court err in failing to suppress the vehicle stop as improper and unsupported by probable cause?" Appellant's Brief at 7.

We begin by recognizing that

> [a]n appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

Instantly, Appellant contends that the trial court erred in denying his motion to suppress because the court's decision was premised solely on its believing Trooper Robin's and Trooper Edmonds' testimony "that … an NCIC/CLEAN search … returned no result for the registration plate of the vehicle." Appellant's Brief at 12. Appellant insists that the court should have

found the troopers' testimony in this regard incredible for two reasons. First, he stresses that "[t]here was no report or print out produced to verify that a registration check returned … no results[,]" and Appellant was not charged with "any registration violations." *Id.* Second, the MVR contradicted statements made by Trooper Robin in the affidavit of probable cause to arrest Appellant. For instance, Appellant claims that Trooper Robin asserted in the affidavit that they "were traveling when they first encountered [A]ppellant's vehicle, when [the MVR] footage clearly shows the police vehicle to be parked and stationary…." *Id.* at 13. Appellant also stresses that the troopers testified "that they observed turn signal violations[,] when in fact the footage reveals that there was no possible way such violations could have been observed." *Id.* Appellant insists that these inconsistencies between the affidavit of probable cause, the troopers' testimony, and the MVR should have caused the trial court to find incredible the troopers' testimony that no registration records were found when they ran his plate information. Thus, he maintains that the evidence was "insufficient to render this traffic stop valid." *Id.*

Appellant's argument is unconvincing. This Court has repeatedly stressed that

> [w]e are highly deferential to the suppression court's factual findings and credibility determinations. *Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super.

2003) (citations omitted). If the record supports the suppression court's findings, we may not substitute our own findings. ***Batista***, 219 A.3d at 1206.

***Commonwealth v. Carmenates***, 266 A.3d 1117, 1123 (Pa. Super 2021).

Here, defense counsel questioned both troopers about the portions of the affidavit of probable cause that conflicted with the MVR. Each trooper conceded that some misstatements were made in the affidavit. ***See*** N.T. at 27 (Trooper Edmond's testifying that the affidavit of probable cause stating that they were traveling when he first observed Appellant's vehicle was a "mistake in the affidavit"); ***id.*** at 43 (Trooper Robin's conceding he "made a mistake on the intersection … [where] he actually observed the first left turn signal … violation"). Additionally, Trooper Robin and defense counsel had the following exchange regarding the alleged inconsistency between the affidavit and the troopers' testimony about whether they were parked or driving when they first observed Appellant's vehicle:

> [Defense Counsel: The affidavit of probable cause] says, ["w]e were traveling southbound on East Railroad Street in Pottsville?["]
>
> [Trooper Robin:] Yes.
>
> [Defense Counsel:] You weren't traveling, correct, you were sitting, parked in front of the warehouse?
>
> [Trooper Robin:] I was traveling though.
>
> [Defense Counsel:] Well, you pulled out but --
>
> [Trooper Robin:] Yes.
>
> [Defense Counsel:] At the time you first saw the car, you were sitting?

[Trooper Robin:] No. I didn't see the vehicle. My partner[, Trooper Edmonds,] saw the vehicle. I pulled out, began traveling, and that is when I saw the vehicle.

[Defense Counsel:] But your affidavit says, ["w]hile traveling, we observed.["]

[Trooper Robin:] That's when I observed the vehicle.

[Defense Counsel:] But that's not true because your partner saw it while you were still sitting. You had to sit and wait for another car to go past?

[Trooper Robin:] I didn't [attest in the affidavit] to what he saw. I [attested] to what I saw.

[Defense Counsel:] But you put in your affidavit that, ["w]e were traveling when we observed the car[."]

[Trooper Robin:] When I observed it.

[Defense Counsel:] It says, "we"; correct?

[Trooper Robin:] Yes. Yes.

[Defense Counsel:] So that's not true, you're saying you didn't observe it at all and he observed it while you were still sitting?

[Trooper Robin:] I observed it while I was traveling. He observed it while we were sitting.

N.T. at 40-41.

Moreover, both troopers testified that they observed Appellant's failing to use his turn signal, even though the MVR did not capture it. *See id.* at 25 (Trooper Edmonds testifying that he "had a better line of sight" than the MVR, and from his "clear" view of the stop sign, he saw no "flashing" of Appellant's turn signal); *id.* at 42-43 (Trooper Robin's testifying that he saw Appellant fail to use a turn signal at two separate intersections). Both troopers also testified consistently that they ran Appellant's "registration plate" and no records came back. *Id.* at 32, 38. The trial court was entitled to credit the troopers'

testimony in this regard, despite their admissions that misstatements were made in the affidavit of probable cause.  *See Elmobdy*, 823 A.2d at 183.

Moreover, the record supports the trial court's determination "that Trooper Robin did not activate his lights and siren until he learned the vehicle was unregistered."  TCO at 10 (citing N.T. at 32, 39, 50).  We agree with the court that, "[o]nce the NCIC search came back with no records, Trooper Robin possessed probable cause to believe Appellant was in violation of 75 Pa.C.S. § 1301(a)."[1]  *Id.*; *see also Commonwealth v. Richard*, 238 A.3d 522, 527 (Pa. Super. 2020) (finding that an officer had probable cause to stop Richard once the officer learned that the vehicle was unregistered in violation of section 1301(a)).

Notably, Appellant makes no argument that the troopers lacked probable cause to stop him once they discovered that his vehicle was unregistered; he simply argues that the court should not have believed the troopers' testimony that no records came back when they ran his vehicle's information.  For the reasons stated *supra*, we reject Appellant's challenge to the court's credibility determination.

Appellant also briefly argues that the inventory search of his vehicle was unlawful, as the troopers should have obtained a warrant before conducting

---

[1] That provision states: "No person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration."  75 Pa.C.S. § 1301(a).

that search. **See** Appellant's Brief at 13-14. Appellant did not raise this issue in his motion to suppress. **See** Defendant's Motion, 9/5/24, at 3 (unnumbered) (arguing only "that there was no probable cause to support a traffic stop" and "that the stop was therefore illegal and … any and all evidence obtained as a result of that illegal stop should be precluded from being introduced at trial"). Appellant also did not state this claim in his Rule 1925(b) statement, and the court did not address it in its opinion. Thus, it is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Pa.R.A.P 1925(b) Order, 12/6/24, at 1 (unnumbered single page) (warning that the "failure to properly include an issue in the [Rule 1925(b)] statement shall be viewed as a waiver of the issue"); **see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (citations omitted; some brackets added).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/10/2025